Freddie **REESE**, Plaintiff,

v.

**GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

No. 91–4283–RDR.

United States District Court, D. Kansas.

July 14, 1994.

Gregory J. Bien, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action which plaintiff brings pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* This case is now before the court upon defendant's summary judgment motion.

*Facts*

The following facts appear to be uncontroverted. Plaintiff is a black man. He began his employment with defendant at defendant's plant in Topeka, Kansas in May 1985. While plaintiff was employed by defendant he lived in Lawrence, Kansas. This case arises from plaintiff's employment, his termination on October 5, 1988, and his subsequent efforts to obtain employment.

Plaintiff was placed in a disciplinary program because of absenteeism on September 1, 1987. The previous month plaintiff had missed one day for illness and one "hospital pass" day. The program does not require a certain amount of absenteeism before a worker is entered into it. The program has five steps, the fifth one being termination. The company rules describe the five steps as follows:

Step # 1—Area Manager will talk to the employee on the job on a confidential and positive basis.

Step # 2—Should another incident arise which requires follow-up action, the Area Manager will again address it casually on the job, but will later call the employee into his office for a more serious discussion. In addition, the incident should be discussed with the employee's union representative.

Step # 3—In the event of a repeat infraction, Step # 2 should be repeated with some additions. The Area Manager, with the union representative present, should express concern over the problem and hope that the person will decide to conform to the requirements expected. This discussion should be confirmed in writing, signed by the department manager, and a copy given to the employee, union representative and union president. One year should elapse without incident before this step is cleared from the record.

Step # 4—An employee who refuses to change his conduct, resulting in a similar incident, will once again be called to the office. In the presence of the union repre-

sentative, the Area Manager should advise the employee that he will be given time off with pay to consider whether or not he can function within the established standards of the work place. The employee will be asked to provide a letter of commitment indicating whether or not he has chosen to correct his problem and operate under the established standards. To be consistent with the philosophy of positive discipline, the decision to correct his problem and write a letter of commitment must be left up to the employee. At this time, the employee should be told that another incident will be interpreted to mean that the employee has chosen not to comply with the established standards of the work place and termination could result. This discussion is again confirmed in writing, signed by the department manager and given to the employee with copies to the union representative and the union president. Again, one year without incident should elapse before this step is cleared from the record.

Step # 5—Should another incident happen, the employee is to be placed on a 2–day cooling off period (two full working days) while consideration is being given to whether he will be terminated. Once an employee is placed on a two-day cooling off period, the Union can request a meeting of the Positive Discipline Review Board to present their views as to the immediate issue. Any decision to terminate an individual's employment will be confirmed in writing, signed by the department manager and sent to the employee with copies to the union representative and the union president.

On January 4, 1988, plaintiff was placed on the third step of the program. Then he was absent from work on January 7, 8, 9 and 11 because of reported car problems. On January 12, 1988, plaintiff was put on the fourth step of the program. During a meeting with management and union representatives, plaintiff was reminded that on January 4, 1988, when he was placed on step three of the program, he made an oral commitment "not to miss work for any excuse." He was also warned that failure to correct his attendance problem could result in discharge from

the plant. During the remainder of January 1988 and in February 1988, plaintiff missed several days of work because of high blood pressure, flu, strep throat, pneumonia and a snow storm which prevented him from driving to work. Because of these absences from work, plaintiff was terminated from employment on February 24, 1988.

Plaintiff filed a grievance protesting his discharge. He was represented by his union. The arbitrator ruled in favor of plaintiff because absences for medical reasons and inclement weather are excused under the labor contract. This ruling, which was dated June 24, 1988, reinstated plaintiff to the fourth step of the disciplinary program.

Plaintiff returned to work on July 25, 1988. On August 5, 6, 7 and 8 plaintiff missed work to take his brother and sister to Mississippi to visit his ill mother. On August 9, 1988, plaintiff was counseled that if he was going to be absent from work for any reason, he must call the plant office and explain the reason for being absent from work. Later in August, plaintiff missed work so that he could be with his mother in Mississippi. His mother was suffering from moderately severe hypertension. Plaintiff called the office to inform defendant that he would be absent. When plaintiff returned to work on August 26, 1988, he was counseled by defendant for excessive absences and placed on a two-day cooling off period.

On August 29, 1988, plaintiff met with management personnel and a union representative. He was given a letter of agreement for signature. Plaintiff signed the agreement, although he felt forced to do so. The agreement stated:

> The following is documentation of points agreed to by Mr. Fred Reese and the Local Union with regard to Mr. Reese's continued employment with Goodyear Tire & Rubber Company.
>
> 1. The Company will not tolerate any absence from work for any reason not arranged with proper management approval. To gain approval for an absence Mr. Reese must meet *in person* with management prior to the requested ab-

sence and obtain specific written approval.

2. If Mr. Reese is absent from work without complying with the requirements dictated by this letter his employment with Goodyear Tire & Rubber Company will be terminated. Furthermore, Mr. Reese agrees to not process a grievance if discharged because of violation of this letter.

Plaintiff was absent from work for several days in September 1988 because he was suffering with abscessed teeth. No disciplinary action was taken, although a supervisor indicated that 3.5 hours of his absence from work was unexcused.

Plaintiff was scheduled to report to work at 3:00 p.m. on October 3, 1988, which was a Monday. He did not report until 6:00 p.m. He called at 2:40 p.m. and again at 2:50 p.m. to inform defendant that he would not be at work on time. After he arrived at work he met with union representatives and a company manager. He explained that he had been stopped by Lawrence police officers for having illegal tags and was issued a warning ticket. He also reported that his name turned up on a police computer check for nonpayment of child support. He stated that he had to go to the courthouse to prove he had been making his child support payments. Plaintiff related that he called the plant office from the courthouse and that he left the courthouse about 3:30 or 4:00 p.m. He further stated that when he returned from the courthouse he found his apartment had been broken into and, therefore, had to call the police and the apartment manager.

Plaintiff was sent home for a two-day cooling off period. He was asked to find documents to substantiate his explanation of his late arrival at work. Plaintiff produced a letter from his attorney, dated October 5, 1988. The recitation of events in the letter differed in some respects from the explanation given by plaintiff to the company supervisor on October 3, 1988. The letter indicated that plaintiff found his apartment had been burglarized when he returned from a weekend fishing trip. Reporting the burglary, combined with previous plans to get car tags and pay his child support, made plaintiff late to work, according to the letter. Plaintiff produced a police report. But, the report stated that a break-in was reported by plaintiff on the morning of October 4, 1988 and that the break-in occurred on the morning of October 3, 1988. Plaintiff also produced a maintenance request document which indicated that plaintiff made a request for the repair of a broken window on the morning of October 3, 1988.

The letter of termination which plaintiff received stated:

> On Monday, October 3, 1988 you called into the gatehouse and stated you would be late. Ten minutes later you called to report off Personal Other. Al Grubb, Division Chairman, contacted you and told you that you must report to work. You arrived at 6:00 PM. You were talked to in the office with your Union Representative and Area Manager.
>
> You were sent out of the plant and was told to report to Jim Gray's office on Wednesday, October 5, at 3:00 PM.
>
> In the Wednesday meeting those present were yourself; Al Grubb, Union Rep.; Ken Jordan, Business Center Auditor; and the writer of this letter.
>
> Your attendance was discussed and you were told that you have not lived up to the agreement letter dated August 29, 1988. Management and the Local Union has worked with you to help you correct your attendance problem. You have not responded.
>
> Therefore, you are discharged.

Plaintiff has denied he called to report that he would be absent. Plaintiff contends instead that he merely told the company he would be late. For the purposes of the instant summary judgment motion, we accept plaintiff's position.

Plaintiff's complaint to the Kansas Commission on Civil Rights, dated April 10, 1989, alleged that he was terminated because of his race. It did not assert harassment. In August 1989, plaintiff filed a second administrative complaint which asserted that defendant gave bad references to plaintiff's prospective employers in retaliation for plaintiff's filing of an administrative complaint. This adminis-

trative complaint also did not assert harassment.

Defendant has a policy which limits the release of employment information to verification of employment, duration of employment, and current or last position held. Plaintiff testified in his deposition that prospective employers told him defendant said plaintiff "wouldn't work" or had "bad absenteeism". (Plaintiff's deposition, p. 90).

Plaintiff has stated in an affidavit that "on different occasions" when he worked for defendant he was asked by management personnel if he had running water and an indoor toilet in his "shack" in Mississippi. He felt these statements "insinuated" that only black people lived in Mississippi and that all black people were drug abusers.

## Summary judgment standards

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505 [2509] (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 [2552] (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348 [1355–56] (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain

this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324 [106 S.Ct. at 2553]; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

## Discharge

In this case, plaintiff has asserted discrimination in three respects: discharge, harassment and retaliation. We will first examine plaintiff's discharge claim.

The analytical framework for a wrongful termination claim in a Title VII action was also reviewed in *Martin v. Nannie and the Newborns, Inc., supra:*

> Initially, the plaintiff must show that (i) she belongs to a protected class; (ii) she was qualified and satisfactorily performing her job; and (iii) she was terminated under circumstances giving rise to an inference of discrimination. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 985 (10th Cir.1991); *McAlester v. United Air Lines*, 851 F.2d 1249, 1260 (10th Cir.1988); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 67 L.Ed.2d 207, 101 S.Ct. 1089 [1094 n. 6] (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L.Ed.2d 668, 93 S.Ct. 1817 [1824] (1973)). Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the decision which adversely affected the employee. *McDonnell Douglas*, 411 U.S. at 802 [93 S.Ct. at 1824]. Once the defendant has set forth a facially nondiscriminatory reason for the decision, the "factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255 [101 S.Ct. at 1095]. The plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based on an impermissible motive. *Burdine*, 450 U.S. at 256 [101 S.Ct. at 1095]. The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a "pretext for the sort of discrimination pro-

hibited by [Title VII]." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, —— n. 6, 113 S.Ct. 2742, 2752 n. 6 [125 L.Ed.2d 407] (1993) (quoting *McDonnell Douglas,* 411 U.S. at 804 [93 S.Ct. at 1825] ); *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1316–17 (10th Cir.1992).

We shall assume for the purposes of this order that plaintiff has established a prima facie case of discrimination in his discharge.[1] Defendant has set forth proof of a facially nondiscriminatory reason for plaintiff's termination. Defendant's proof indicates that defendant terminated plaintiff because of a perceived problem with absenteeism and because plaintiff failed to follow the terms of an agreement he made pursuant to defendant's disciplinary program. We do not believe plaintiff has presented evidence which a reasonable person might consider sufficient to reestablish an inference of discrimination. Plaintiff contends that the subjective nature of defendant's alleged reasons for discharging plaintiff produces an inference of discrimination. Plaintiff cites *Pitre v. Western Electric Co.,* 843 F.2d 1262, 1271–72 (10th Cir.1988) and *Berry v. General Motors Corp.,* 796 F.Supp. 1409 (D.Kan.1992). We find the facts of these cases to be distinguishable from the facts of this case. In *Pitre* and *Berry,* the employers considered factors like ability, performance, potentiality, the needs of the business, people skills, and initiative. We believe these factors are much more subjective than the factors which defendant asserts were considered to terminate plaintiff, i.e., whether an employee was at work as scheduled and whether the employee received advance approval to miss work. Another distinguishing point between the case at bar and *Pitre* and *Berry* is the qualifications of the employees. In *Pitre* and *Berry,* the employees were, but for the subjective considerations, qualified for the positions they desired and were indisputably qualified to work for their employers. In the case at bar, plaintiff's attendance problem, by itself, was considered by defendant as grounds disqualifying plaintiff from any job at the plant. Plaintiff has not named any

other employee who had an attendance record similar to plaintiff's and was permitted to continue working at the plant. Finally, in *Pitre* and *Berry* there was other strong evidence of discrimination which would buttress an inference of discrimination. There were complaints of harassment, a history of alleged discrimination, and complaints by other employees. In the instant case, the supporting evidence of discrimination is not nearly as strong.

Plaintiff's only direct evidence of a discriminatory motive is contained in an affidavit where he states:

> On different occasions Goodyear management personnel asked me if I was using drugs because I talk slow. Also, on different occasions Goodyear management personnel had asked me if we had running water and an indoor toilet in the "shack" I lived in back in Mississippi. I felt these statements insinuated that all Black people used drugs a lot or that only Black people lived in Mississippi.

Plaintiff does not detail when these comments were made or who made them. We do not know whether the supervisors responsible for discharging plaintiff made the comments. No nexus between the comments and the decision to discharge plaintiff is asserted. Nor can we identify the comments with racial prejudice as opposed to prejudice against people who talk slowly or people from Mississippi. We do not believe a reasonable jury would consider these comments sufficient to infer that plaintiff was discharged because of his race. See *Rush v. McDonald's Corp.,* 966 F.2d 1104 (7th Cir. 1992) (comments to the effect that black employees complain too much were insufficient to create a genuine issue of material fact regarding whether discharge for violation of attendance policy was pretextual); *Clark v. A.T. & S.F. Ry.,* 731 F.2d 698, 702 (10th Cir.1984) (isolated comments insufficient to raise inference of discriminatory intent); *Jackson v. Boeing Co.,* 1992 WL 42913, 1992 U.S.Dist. LEXIS 2866 (D.Kan. 2/10/92) (references to black plaintiff as "boy"

---

1. We acknowledge that excessive absenteeism may render an employee unqualified for a job. *Mitchell v. Safeway Stores, Inc.,* 624 F.Supp. 932,

935 (D.Kan.1985). Nevertheless, we shall assume for the purposes of this order that plaintiff has established a prima facie case.

were insufficient to create a genuine issue of material fact regarding whether discharge for excessive absenteeism was pretextual).

Finally, plaintiff asserts that statistical evidence supports his allegations of discrimination. The statistics presented by plaintiff are that 7% of the plant workforce was black, but 17% of the employees in the disciplinary program (2 of 12) were black. We do not believe a reasonable jury would give this evidence any weight. The number of employees in the disciplinary program is very small. Furthermore, unlike plaintiff, none of the other employees in the disciplinary program were terminated. We recognize that a factfinder may consider statistical evidence which does not satisfy strict standards of social science. *Pitre v. Western Electric Co., supra,* 843 F.2d at 1268–69. But, this evidence is so weak and the alleged corroborating evidence is also so weak, that we do not believe any reasonable jury would consider it sufficient to establish that defendant's grounds for terminating plaintiff were a pretext for racial discrimination.

Therefore, the court shall grant summary judgment against plaintiff's discharge claims.

### Harassment

■ Plaintiff's complaint makes a claim of racial harassment. Defendant is entitled to summary judgment against this claim for two reasons. First, the claim is beyond the scope of the charges plaintiff made to the Kansas Commission on Civil Rights. These charges only mentioned plaintiff's discharge and post-discharge retaliation. In *Rush v. McDonald's Corp., supra,* the court considered an administrative charge alleging termination and racial discrimination. It was similar to the ones made by plaintiff prior to this case. The court concluded that a racial harassment claim, which was not mentioned in the administrative charge, could not be raised in the Title VII court action. We agree with this result.

■ Secondly, even considering the substance of plaintiff's harassment claim, there is nothing in the record which suggests the type of oppressive work environment that provides a cause of action under Title VII. "When the workplace is permeated with 'dis-criminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). " '[M]ere utterance of an ... epithet which engenders offensive feelings in an employee,' ... does not sufficiently affect conditions of employment to implicate Title VII." *Harris,* —— U.S. at ——, 114 S.Ct. at 370 (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405) (first ellipsis in *Harris*). In the case at bar, plaintiff can prove conduct which was offensive to him, but not conduct sufficiently severe or pervasive that a reasonable person would find it hostile or abusive. Therefore, plaintiff is unable to establish an essential element of a racial harassment action and summary judgment against this claim is proper.

### Retaliation

Finally, we consider plaintiff's retaliation claim. Plaintiff asserts that defendant has given prospective employers bad references concerning plaintiff in retaliation for plaintiff's filing of a discrimination charge. Defendant has asserted that it would not do such a thing because company policy strictly limits the type of employment information which it releases. Defendant also contends that "[p]laintiff has proffered no credible admissible evidence to support a claim that any prospective employer was given a 'bad recommendation' because of the administrative charges ..."

■ The only evidence offered by plaintiff to support his retaliation claim is his deposition testimony that he was told by other people that defendant gave him a bad reference. This is hearsay evidence which would be inadmissible at trial. Accordingly, it cannot be considered on a motion for summary judgment. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990); see also, *World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.) *cert. denied,* 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985).

Because plaintiff has not presented proper proof of a critical element of a retaliation claim (i.e., that defendant took an adverse action against plaintiff because of his discrimination charge), summary judgment is warranted against the claim.

*Conclusion*

After a review of the pleadings and materials before the court, for the above-stated reasons defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**