**Soon Y. PARK, Appellee,**

v.

**HOWARD UNIVERSITY, Appellant.**

No. 94–7213.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1995.

Decided Dec. 15, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Feb. 12, 1996.*

---

* Circuit Judge Tatel did not participate in this    order for rehearing in banc.

Amy F. Kett, Washington, DC, argued the cause for appellant, with whom Janet P. Holt and David G. Leitch were on the briefs. William P. Flanagan entered an appearance.

St. John Barrett, Washington, DC, argued the cause and filed the brief for appellee.

Before WALD, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The District Court entered judgment for Soon Y. Park, a professor of pharmacy, on her hostile work environment claim against her employer, Howard University, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). Because Park failed to exhaust her administrative remedies for this claim before the Equal Employment Opportunity Commission ("EEOC") prior to filing suit, we reverse the District Court's judgment.

## I. Factual Background

Soon Y. Park is a naturalized United States citizen born in South Korea. She is a tenured Associate Professor in the Department of Pharmacy Practice at Howard University's College of Pharmacy and Pharmacal Sciences. She was awarded tenure in 1987,

approximately six years after joining the faculty. In her years on the faculty, she has taught courses, performed research, and been involved in several academic committees. In 1991, Park sought the recently vacated position of Assistant Dean for Student Affairs in the College of Pharmacy, but Bertram Nicholas, a white American, was chosen for the post. Park filed a charge with the District of Columbia Department of Human Rights and the EEOC which claimed that Howard had discriminated against her based on her sex and her national origin in selecting Nicholas for the Assistant Dean position. After receiving a Notice of Right to Sue from the EEOC, Park filed this lawsuit on November 25, 1992. The complaint alleged sex and national origin discrimination in Howard's selection of Nicholas for the Assistant Dean position. On December 11, 1992, Park filed an Amended Complaint, in which she alleged an "atmosphere of sexual harassment" at Howard. Am.Compl. at 3. Howard moved for partial summary judgment on the sexual harassment allegation, and the District Court granted this motion "on the grounds that the Amended Complaint contains no discrete claim of sexual harassment." Order of Oct. 28, 1993.

At trial, the District Court construed the remains of the Amended Complaint to allege two separate charges: one for sex and national origin discrimination in the Assistant Dean selection process, and one for "[a]n ongoing pattern of discrimination against plaintiff based on her sex *and* national origin which created a hostile work environment." Mem.Op. of Apr. 8, 1994 at 2 (emphasis in original). The court also held that Park had fully exhausted her administrative remedies at the EEOC as to both claims. *Id.* at 14. Park lost on the discrimination claim because the District Court concluded that Howard "had a legitimate and nondiscriminatory reason" for the selection of Nicholas as Assistant Dean—Nicholas held a doctorate in higher education administration and had prior assistant deanship experience, whereas Park met neither of these criteria. *Id.* at 10–11, 14–16, 15. But the District Court did conclude that Park had been "subject to continuous discriminatory conduct" that was "sufficiently pervasive to amount to harass-

ment which created a hostile work environment" based on Park's national origin (but not based on her sex). *Id.* at 19, 20–21. As evidence of the hostile work environment, the court cited (1) two occasions where Park was replaced by a black colleague on an administrative assignment, (2) mishandling of two other personnel decisions, and (3) one derogatory comment about an applicant for a faculty position who had an Asian name, and, incidentally, about Park herself. *Id.* at 17–20. Although some of this activity occurred before the 300–day limitations period, the court held that it constituted a "continuing violation," eventually awarding Park $150,000 in compensatory damages. *Id.* at 21 n. 5; Mem. and Order of Sept. 23, 1994. Howard appeals from this judgment on multiple grounds.

## II. Legal Analysis

Park prevailed in the District Court on her claim of a hostile work environment based on her national origin. Discriminatory conduct results in a hostile work environment when it is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," thus offending "Title VII's broad rule of workplace equality." *Harris v. Forklift Sys., Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Although there is no requirement of psychological harm, *id.,* it remains true that "casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action." *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981). In this case, the District Court justified its finding of a hostile work environment by pointing to Park's dismissal from committee assignments, a derogatory comment by one of Park's colleagues about a job applicant with an Asian name and about Park herself, Howard's failure to notify Park of her failure to win the Assistant Dean post, and Park's replacement as coordinator of a student clerkship program. Howard maintains that these allegations, even if true, do not constitute sufficient evidence to justify a finding of a hostile work environment. However, as our analysis will show, Park

loses on another threshold question—she failed to exhaust her administrative remedies at the EEOC for the hostile work environment claim. It is therefore unnecessary to consider Howard's arguments about the sufficiency of the evidence.

■ Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself. 42 U.S.C. § 2000e–5(f)(1) ("[W]ithin ninety days after the giving of [a notice of right to sue] a civil action may be brought against the respondent named in the charge."); *see also Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1413 n. 1 (D.C.Cir.1983); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) (all construing the exhaustion of administrative remedies requirement). A Title VII lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994) (citations and internal quotation marks omitted). At a minimum, the Title VII claims must arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Service*, 665 F.2d 482, 491 (4th Cir.1981).[1] The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and "narrow[ing] the issues for prompt adjudication and decision." *Laffey*, 567 F.2d at 472 n. 325 (internal quotations and citation omitted). Although it is true that the administrative charge requirement should not be construed to place a heavy technical burden on "individuals untrained in negotiating procedural labyrinths," *Loe v. Heckler*, 768 F.2d 409, 417 (D.C.Cir.1985), it is also true that "the requirement of some specificity in a charge is not a 'mere technicality.'" *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir.1992). A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

■ Although Park filed an administrative charge, it did not express or even hint at a national origin hostile work environment claim. The particulars of her charge read, in their entirety:

1. I was employed by the Respondent on August 15, 1981, as an Assistant Professor, earning a salary of $27,500 pe[r] annum. I am still employed by the Respondent, as an Associate Professor, earning a salary of approximately $56,300 per annum.

2. The Respondent has not articulated a valid reason for discriminating against me.

3. It is my belief that I was discriminated against on the bases of my sex (female) and national origin (Korean) for the following reasons:

A. In May or June 1991, Dr. Vincent G. Teling, (Associate Dean of Academic Affairs—India), and Dr. Olusanya (Chairman—Nigeria) asked me if I was interested in the position of Assistant Dean for Student Affairs when it became vacant. I said that I would be interested. I was told I would be recommended for the position to Dr. Wendell T. Hill, Dean (America).

B. The position became officially vacant in August or September 1991.

C. I applied for the position in writing to Dean Hill on October 19, 1991. I did not receive a reply.

D. On March 25, 1992, I became aware that the position of Assistant Dean for

---

1. This is not to suggest that there will always be an administrative EEOC investigation after a charge. Many cases are not investigated at all and the EEOC simply sends a right-to-sue letter to the charging party. We, and the Fourth Circuit, only intend that claims within a Title VII suit must be such as could reasonably be expected to be encompassed within an administrative investigation if one did follow the charge.

Student Affairs was held by Dr. Bertlam [sic] Nicholas (American male). I became aware of this by [a] memorandum that was written by him on the above stated date. An official announcement stating that Dr. Nicholas filled this position has not been made as of 09/23/92.

E. On June 2, 1992, I wrote a memorandum to Dean Hill, asking him why I was not interviewed or selected for the position in question, which I believe I was qualified for.

F. On July 23, 1992, in a meeting this statement was said: Those faculty members who hold administrative positions in the Dean's office, specifically Assistant Dean(s) and Associate Dean(s) do not have to go through the college's Appointment, Reappointment, Promotion and Tenure Committee. The Dean himself will "take care" of the promotion and tenure process and award these administrative faculty members the next higher rank and/or tenure.

G. Statements such as the above lead me to believe that Dean Hill can place anyone in a position that he wants. There is not an administrative process in the Dean's office that an employee can go through to apply for a vacant position.

H. It is my belief that I was denied the opportunity for advancement in my career because of my sex (female) and my national origin (Korean).

District of Columbia Dep't of Human Rights and Minority Business Development Complaint in the Matter of Soon Y. Park v. Howard University 1–2 (Sept. 23, 1992).

Park's charge not only lacks the words "hostile work environment," but also lacks any factual allegations supporting such a claim. Her challenge to the selection of Nicholas as Assistant Dean does not incorporate the various other claims relied upon by the District Court in its finding of a hostile work environment, and the charge does not contain any other challenges to Howard's actions. The bald statement that "[i]t is my belief that I was denied the opportunity for advancement in my career because of ... my national origin" cannot be read to encompass a hostile work environment claim. As the Seventh Circuit has noted, "[s]ome detail, beyond a statement that 'I believe I have been discriminated against because of my race, Black' is necessary to allow the agency to perform its statutory duty" in regard to a harassment claim. *Rush*, 966 F.2d at 1111. "[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* at 1110. Other courts have reached the same result. *See, e.g., Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 672–73 (8th Cir.1994); *Prizevoits v. Indiana Bell Tel. Co.*, 882 F.Supp. 787, 791–92 (S.D.Ind.1995); *Riley v. Technical and Management Servs. Corp.*, 872 F.Supp. 1454, 1459 (D.Md.1995); *Cabiness v. YKK (USA), Inc.*, 859 F.Supp. 582, 586–87 (M.D.Ga.1994); *Reese v. Goodyear Tire & Rubber Co.*, 859 F.Supp. 1381, 1387 (D.Kan.1994); *Revis v. Slocomb Indus., Inc.*, 814 F.Supp. 1209, 1219 (D.Del.1993); *Ghahramani v. BASF Corp.*, 755 F.Supp. 708, 710–11 (M.D.La.1991); *Baltzer v. City of Sun Prairie/Police Dep't*, 725 F.Supp. 1008, 1019 (W.D.Wis.1989); *Torriero v. Olin Corp.*, 684 F.Supp. 1165, 1170 (S.D.N.Y.1988).

Park's only other possible argument is that we should rely on the contents of her "Private Sector Employment Pre–Complaint Questionnaire" which she completed for the District of Columbia Department of Human Rights several weeks before filing her charge with the EEOC. She attached to her pre-complaint questionnaire a typed statement detailing Howard's allegedly discriminatory actions against her. It would be possible to construe some of the wording in that statement to make out a hostile work environment claim. However, the pre-complaint questionnaire is not the same as an EEOC charge—it even states on its face that "[t]here is no guarantee that the information submitted will constitute a basis for filing a formal complaint." District of Columbia Dep't of Human Rights Private Sector Employment Pre–Complaint Questionnaire at 1 (Aug. 13, 1992). Additionally, Title VII requires charges to be sworn, 42 U.S.C. § 2000e–5(b),

and the pre-complaint questionnaire was not. *See Hodges v. Northwest Airlines, Inc.*, 990 F.2d 1030, 1032 (8th Cir.1993) (holding that an unsworn EEOC questionnaire "did not constitute a valid charge under Title VII" until it was signed under oath). Finally, there is no evidence that Howard or the EEOC ever had access to the questionnaire, so it could not have fulfilled the purpose of the required administrative charge. "To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire." *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 80 (7th Cir.1992).

### III. Conclusion

Because Park's EEOC charge contained no claims or factual allegations that could reasonably be expected upon investigation to lead to a hostile work environment claim, we hold that she failed to exhaust her administrative remedies for such a claim at the EEOC. Her civil claim for a hostile work environment is therefore barred. Accordingly, we reverse the District Court's judgment in favor of Park. Howard raises additional arguments in opposition to the District Court's ruling which we have not addressed, but because of our holding that Park failed to exhaust her administrative remedies for the hostile work environment claim, we find it unnecessary to consider those other arguments.

*Reversed.*