_____

No. 95-2790
_____

Donald E. Diez,                        *
                                       *
                 Appellant,            *
                                       *
     v.                                *   Appeal from the United States
                                       *   District Court for the
Minnesota Mining and                   *   District of Minnesota.
Manufacturing Company, a               *
Delaware corporation,                  *
                                       *
                 Appellee.             *


_____

                 Submitted:  February 15, 1996

                    Filed:  July 12, 1996
_____

Before HANSEN, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Donald E. Diez appeals from the summary judgment entered against him
in his Age Discrimination in Employment Act claim against Minnesota Mining
and Manufacturing Co., known as 3M.  The district court[1] held that Diez had
not filed an administrative charge with the Minnesota Department of Human
Rights within 300 days of the act of discrimination, as he was required to
do under 29 U.S.C. § 626(d)(2) (1994).  Diez appeals, arguing that he
filled out an agency questionnaire within the required time and that the
questionnaire was by law a "charge."  We affirm the judgment of the
district court.


_____

     [1]The Honorable James M. Rosenbaum, United States District
Judge for the District of Minnesota.

Diez worked for 3M from 1962 to August 1, 1992, when he retired at the age of fifty-eight.  He alleged in his complaint that 3M began discriminating against him in favor of younger workers when he was forty-eight years old.  He was demoted in 1990 and his former position was filled by a younger person, but Diez was required to continue functioning at the higher management level without commensurate pay.  He requested that his job be re-evaluated so that he could be paid in accordance with the work he was actually doing; 3M began a formal process to consider his request.  At the same time his request was pending, in April 1992, 3M announced a reduction in force would take place in the tape department, where Diez worked.  3M offered tape department employees a voluntary severance pay plan if they retired or otherwise resigned before the end of July 1992.  Diez had to choose whether to retire voluntarily and receive the severance payment or take his chance that he would survive the reduction in force without being laid off.  Diez alleged that he asked 3M's managers whether he would be kept on after the reduction in force and that they gave him no assurance.  He alleged that a vice-president of 3M told him "that there were few or no opportunities for employees in their mid-fifties or older."

Diez elected to take early retirement to get the severance pay.  He filled out an application for retirement on June 1, 1992.  He modified 3M's form by writing in the words "under duress" and gave his retirement date as December 31, 1992, instead of the July 31 date specified in the severance pay plan.

On June 25, 3M told Diez that his job had been upgraded as he requested, but by this time Diez had already applied for retirement.  Diez alleged that 3M gave the upgraded job to a "materially younger" person.

3M rejected Diez's pending application for early retirement because of the December date and the "under duress" language Diez

had added to the form.  On July 7, 1992 Diez completed another application without the "under duress" language and with a retirement date of August 1, 1992.  Both applications were on a 3M form that said, "Please process my retirement/resignation with an effective date of _____ subject to approval by 3M." (emphasis added).  The record is silent as to when 3M conveyed its approval of Diez's application, but Diez retired on August 1, 1992.  Diez contends he was constructively discharged as of August 1, so the alleged adverse action took place no later than August 1.

On May 19, 1993 Diez visited the offices of the Minnesota Department of Human Rights and received an intake questionnaire. The Minnesota Department of Human Rights has a worksharing agreement with the EEOC by which each agency designates the other as its agent for the purpose of receiving charges.  See 29 C.F.R. § 1626.10(c) (1995).  In his responses to the questionnaire, Diez detailed his complaints and the names of the people at 3M whom he claimed discriminated against him.  He signed the questionnaire on May 20 and returned it to the MDHR on May 21, 1993.  The information in the questionnaire was reduced to a verified "Charge of Discrimination" on a MDHR form, which Diez executed and filed on June 10, 1993.  The MDHR then notified 3M of the charge for the first time.  After 3M responded, the MDHR dismissed Diez's charge on the ground that further use of the department's resources pursuing Diez's claim was not warranted.

Diez filed suit in federal court, claiming 3M violated the ADEA, 29 U.S.C. § 623 (1994), and the Minnesota Human Rights Act, Minn. Stat. Ann. § 363.06 (1991), and that it committed fraud.

3M moved for summary judgment on the theory that Diez did not file an administrative charge against it within 300 days, as provided by 29 U.S.C. § 626(d) (1994).  The court granted summary judgment to 3M on the ADEA claim, relying on Hodges v. Northwest Airlines, Inc., 990 F.2d 1030 (8th Cir. 1993), in which we stated

that an unverified intake questionnaire could not serve as an administrative charge under Title VII.  The district court did not find it necessary to determine the date on which 3M's alleged act of discrimination occurred, because the formal charge was filed more than 300 days from the date of Diez's retirement, August 1, 1992, which was the latest possible date for the act of discrimination.  Because there was no longer any federal claim pending before the court, it declined to exercise jurisdiction over the state claims, citing 28 U.S.C. § 1367(c) (1994).

On appeal, Diez contends that the questionnaire he lodged with the MDHR satisfied the requirement that he file an administrative charge within 300 days of the act of discrimination.

We review the district court's entry of summary judgment de novo.  Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996).  We must affirm if the evidence, taken in the light most favorable to Diez, shows that there is no genuine issue of material fact and that 3M is entitled to judgment as a matter of law.  Id.

The issue of whether EEOC and state agency intake questionnaires can serve as administrative charges has been widely litigated.[2]

---

[2]See, e.g., Park v. Howard Univ., 71 F.3d 904, 908-09 (D.C. Cir. 1995), petition for cert. filed (May 10, 1996) (No. 95-1832); Downes v. Volkswagen, 41 F.3d 1132, 1137-39 (7th Cir. 1994); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992); Philbin v. General Elec. Capital Auto Lease, Inc., 929 F.2d 321 (7th Cir. 1991) (per curiam); Peterson v. City of Wichita, 888 F.2d 1307 (10th Cir. 1989), cert. denied, 495 U.S. 932 (1990); Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1239-41 (11th Cir. 1989); Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 541-44 (7th Cir. 1988), cert. denied, 491 U.S. 907 (1989); Casavantes v. California State Univ., 732 F.2d 1441 (9th Cir. 1984); Price v. Southwestern Bell Tel. Co., 687 F.2d 74 (5th Cir. 1982).

The leading case in our circuit is <u>Hodges</u>, 990 F.2d at 1032, a Title VII case, in which we stated that an intake questionnaire "did not constitute a valid charge under Title VII for purposes of the statute of limitations until [Hodges] signed it under oath . . . ."[3]  <u>Id.</u>; <u>accord</u> <u>Park v. Howard Univ.</u>, 71 F.3d 904, 909 (D.C. Cir. 1995), <u>petition for cert. filed</u> (May 10, 1996) (No. 95-1832).  <u>But</u> <u>see</u> <u>Whitekiller v. Campbell Soup, Inc.</u>, 925 F. Supp. 614 (W.D. Ark. 1996).

In Title VII cases, intake questionnaires do not satisfy the statutory requirements for a charge because they are not verified.  <u>See</u> 42 U.S.C. § 2000e-5(b) (1994) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as [the EEOC] requires.").  <u>But</u> <u>cf.</u> 29 C.F.R. § 1601.12 (1995) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge . . . .").[4]

---

[3]The EEOC in <u>Hodges</u> applied the 300-day time limitation, but we mentioned in a footnote that the proper period was 180 days in that case; even Hodges's questionnaire (not to mention his verified charge) would have been untimely under the 180-day deadline.  990 F.2d at 1032 n.4.

[4]Despite the failure of the questionnaires to meet the Title VII criteria for a charge, some courts have held that the questionnaire can serve as a charge to satisfy the Title VII filing requirement.  Courts have used a variety of theories to save claims in which the plaintiff filed a questionnaire, but not a formal charge, in time.  The Ninth Circuit has expressed the opinion that the intake questionnaire satisfies the requirement of an administrative charge.  <u>Casavantes</u>, 732 F.2d at 1443 ("We note initially that federal regulations governing EEOC procedures make clear that the Intake Questionnaire, as completed by Casavantes, was sufficient to constitute a charge," citing 29 C.F.R. 1601.12(b)); <u>see also</u> <u>Clark</u>, 865 F.2d at 1240-41 (goals of ADEA fulfilled where claimant completed questionnaire and EEOC notified employer within statutory time period, even though formal charge not filed until after limitations period expired).

Some courts have permitted the formal charge to relate back to the date the plaintiff lodged the questionnaire.  <u>Philbin</u>, 929 F.2d at 324, held that later filed documents could be considered amendments to an unverified questionnaire, which would relate back to the time the plaintiff lodged the questionnaire.

-5-

Unlike Title VII, the ADEA does not require that a charge be verified.  The only statutory reference to what might be necessary in a charge comes in 29 U.S.C. § 633(b) (1994), which states:  "If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority."  This  section literally refers to statements sent by registered mail.  The record in this case does not indicate that Diez sent his questionnaire to the MDHR by registered mail.  However, section 633(b) at least implies that charges in general shall be subject only to the minimal requirements that they be written and signed statements of the relevant facts.

The EEOC's regulations are consistent with this understanding.  Under 29 C.F.R. § 1626.6:

> A  charge  shall  be  in  writing  and  shall  name  the prospective respondent and shall generally allege the

Therefore, the claim could be considered timely under Title VII. Accord Peterson, 888 F.2d at 1308; Casavantes, 732 F.2d at 1443.

Other courts have held in particular cases that the EEOC waived the Title VII verification requirement.  In Price, 687 F.2d at 79, the EEOC notified the employer of a claim after the claimant had completed a questionnaire, but before the claimant filed the verified charge.  Price held that the verification requirement was non-jurisdictional and therefore subject to equitable considerations.  Price concluded that there was a triable issue of fact as to whether the EEOC had waived the verification requirement in that case, and reversed the district court's holding that the claim was time-barred.  Cf. Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir.) (applying equitable tolling where MDHR misled plaintiff as to limitation period), cert. denied, 116 S. Ct. 299 (1995).

discriminatory act(s). Charges received in person or by telephone shall be reduced to writing.

Another regulation, 29 C.F.R. § 1626.8, sets out in more detail what should appear in a charge, but specifically provides that the charge is legally sufficient and effective so long as it complies with the minimal requirements of section 1626.6.

Even though the intake questionnaires literally satisfy the statutory and regulatory requirements for a charge, a fuller examination of the regulations and the printed language on the intake questionnaire forms shows that the EEOC does not intend the questionnaires to routinely function as a charge.

In Steffen v. Meridian Life Insurance Co., 859 F.2d 534, 542 (7th Cir. 1988), cert. denied, 491 U.S. 907 (1989), the Seventh Circuit recognized that the intake questionnaires fit within the statutory and regulatory descriptions of a charge, but nevertheless refused to say that this was sufficient for the questionnaire to be treated as a charge. The court stated:

> [T]he EEOC's regulations make clear that, while a charge is `sufficient' if it names the respondent and generally alleges discrimination, not all documents containing such information are charges. There is no other way to explain the distinction in the EEOC's regulations between a `complaint' and a `charge.' A `complaint' is defined to `mean information received from any source, that is not a charge, which alleges that a named prospective defendant has engaged in or is about to engage in actions in violation of the [ADEA] . . . .' 29 C.F.R. § 1626.3 (emphasis added). As noted above, a charge is sufficient under the regulation if it names the respondent and generally alleges a discriminatory act. Thus, under these regulations, any document that names a prospective respondent and alleges a violation of the Act falls within the definition of either a complaint or a charge. The regulations, however, only provide that the Commission shall promptly notify a respondent that a charge has been filed. 29 C.F.R. § 1626.11. The only plausible reason why the EEOC would consider one communication of information to be a `complaint' and

> another to be a `charge' is that a `charge' is submitted under
> circumstances that would lead the EEOC to believe that the
> complaining party sought to `activate the Act's machinery.'
> Moreover, there is no other plausible reason why the EEOC
> labels certain forms as `Intake Questionnaires' and other forms
> as `Charges of Discrimination.'

Id. at 542. The court decided that Steffen's intake questionnaire was completed under circumstances that indicated Steffen intended to "activate the machinery" of the ADEA, because the EEOC employee who took Steffen's questionnaire told Steffen that the EEOC would treat the questionnaire as a charge (although the EEOC did not actually do so). Id. at 544.

The Seventh Circuit has continued to apply the test from Steffen to distinguish between questionnaires that are preliminary to a charge and those that function as a charge: do the circumstances indicate that the claimant intended to activate the machinery of the ADEA by lodging the questionnaire with the agency? Relevant facts include what the claimant and the EEOC personnel said to each other, see Steffen, 859 F.2d at 544, what the questionnaire form said, see Park, 71 F.3d at 908, and what the EEOC actually did in response to receipt of the questionnaire, see Downes v. Volkswagen, 41 F.3d 1132, 1138 (7th Cir. 1994) ("[W]hile it is relevant that the EEOC treated the questionnaire as a charge, we have also held that inaction by the EEOC should not, for time limit purposes, bar an ADEA suit.").

The purpose of distinguishing questionnaires meant to activate the machinery of the ADEA from those that are merely preliminary to a charge is not to keep plaintiffs out of court, but to assure that the ADEA works as it is supposed to. If the EEOC or state agency understands the claimant's lodging of the questionnaire to be

preliminary, it does not notify the employer of the charge.[5] This frustrates a major goal of the ADEA, which is to encourage pre-litigation resolution of claims. See Steffen, 859 F.2d at 542; Early v. Bankers Life & Cas. Co., 959 F.2d 75, 80 (7th Cir. 1992); see also Park, 71 F.3d at 909 (Title VII context); see generally Kloos v. Carter-Day Co., 799 F.2d 397, 400 (8th Cir. 1986).

Diez's affidavit gives us no information about what he and the MDHR personnel said. Diez states in his affidavit:

> I contacted the MN Department of Human Rights on or about May 19, 199[3],[6] and completed its "Employment Discrimination Questionnaire," Exhibit G, on or about May 20, 199[3] and filed it on May 21, 199[3] with the Department. I signed the charge of discrimination on June 10, 199[3], the date on which it was given to me.

Diez does not aver that the MDHR led him to believe he had done all that was necessary once he returned the questionnaire. The fact that Diez later filled out a formal charge indicates that he understood the questionnaire to be preliminary. Further, the questionnaire itself indicated that it was preliminary to a charge; it said: "Please fill out this questionnaire to the best of your ability. The Department will need specific information to determine if your claim can be processed as a charge and to investigate the charge if it is accepted." 3M asserts, without contradiction, that MDHR did not notify 3M of the claim until Diez

---

[5]29 U.S.C. § 626(d) provides: "Upon receiving such a charge [alleging unlawful discrimination], the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." Minn. Stat. § 363.06 requires the MDHR to notify the employer within ten days of the filing of the administrative charge.

[6]The date given in the quoted paragraph of the affidavit appears to be off by a year, since the affidavit gives the year 1992, yet the documents are all dated 1993.

filed the charge in June.

Diez has not presented any evidence to prove the questionnaire was intended to function as a charge in his case.  The only evidence in the record supports the conclusion that the MDHR justifiably considered the questionnaire as preliminary, rather than a legally effective invocation of the ADEA.  Diez has simply not produced the evidence needed to avoid summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Diez also argues that the formal charge filed on June 10 should relate back under 29 C.F.R. § 1626.8(c), which provides:

> A charge may be amended to clarify or amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

We reject this argument because the regulation says, "A charge may be amended . . . ."  (emphasis added).  Since we have decided that the questionnaire was not a charge, the regulation is not applicable.  To treat a subsequently filed charge as an amendment, and thereby backdate the charge, would deprive the employer of the timely notice to which he is entitled.  Cf. Kloos, 799 F.2d at 400 (purposes of charge requirement are to allow agency to attempt informal resolution of claim and to give employer notice of claim).  Rejecting this relation-back theory is consistent with Hodges.  See  990 F.2d at 1032.  But see Whitekiller v. Campbell Soup, Inc., 925 F. Supp. 614 (W.D. Ark. 1996).

We therefore affirm the judgment of the district court.[7]

_____

    [7]3M also argues that the date of the act of discrimination should be fixed at an earlier date than the date of Diez's retirement, citing Delaware State College v. Ricks, 449 U.S. 250 (1980) and Chardon v. Fernandez, 454 U.S. 6 (1981).  In light of our holding that the intake questionnaire was not a charge, we need not decide whether the date of the unlawful act was earlier than the date of Diez's retirement, since the claim is time-barred in any case.

-10-

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.