# F I L E D
United States Court of Appeals
Tenth Circuit

**JUN 1 1999**

**PATRICK FISHER**
Clerk

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

KARLA J. WELSH,

      Plaintiff-Appellant,

v.

CITY OF SHAWNEE, a political
subdivision,

      Defendant-Appellee.

No. 98-6243
(D.C. No. 97-CV-555)
(W.D. Okla.)

## ORDER AND JUDGMENT *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Karla J. Welsh appeals from the district court's grant of summary judgment in favor of her employer, the City of Shawnee, Oklahoma, on her claims for gender discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964. The district court held that it lacked subject matter jurisdiction over her sexual harassment claims because she failed to exhaust these claims with the Equal Employment Opportunity Commission before bringing this suit. It also held that she failed to meet her burden of demonstrating she was denied a promotion based on her gender. We review both the district court's dismissal of Welsh's harassment claims for lack of subject matter jurisdiction and its grant of summary judgment on the remaining claim de novo. *See Jones v. Runyon*, 91 F.3d 1398, 1399-1400 (10th Cir. 1996); *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995). For the reasons explained below, we affirm.

**I.**

Because the district court resolved the case on summary judgment, we present the facts in the light most favorable to Welsh. *See Wolf*, 50 F.3d at 796. Welsh began working for the City in March 1985 as a secretary in its emergency management department. The director of that department, Ron McCalip, told her that he was creating a new deputy director position, appeared to be grooming her for the position, and encouraged her to apply when it became available. In March 1992, she transferred to the police department where she worked, and apparently

-2-

continues to work, as a secretary under the supervision of Chief of Police Hank Land. Shortly after her transfer, Land told her that if the City could force McCalip out, she would probably get his job as director.

In 1992 and 1993, Land behaved in a sexually inappropriate manner toward Welsh, including showing her a pornographic videotape in his office, giving her a sex toy catalog showing people using the devices, hugging her and rubbing against her body, attempting to kiss her, telling her he wanted to buy her sexy lingerie, and indicating in other ways that he wanted to have sex with her. Welsh reported several of the incidents to the then chief of police [1] in November or December 1993, but he took no action.

In March 1994, Welsh asked Land what she needed to do to advance her career, and he told her the City would never promote her. Welsh learned in August 1994 that the City had created the position of deputy director of the emergency management department and had transferred Jim Carter from the finance department to fill it. Land and the director of budget and financial services made the decision to transfer Carter to the deputy director position, and the city manager approved their decision. On April 27, 1995, Welsh filed a charge of discrimination with the EEOC. After the EEOC indicated it would not

[1] By this time, Land had been promoted to director of safety and public administration, and Joe LaHue was chief of police, and apparently Land's subordinate. After LaHue resigned, Land reassumed the duties of police chief.

-3-

bring any action against the City and issued her a right-to-sue letter, this action ensued.

In her complaint, Welsh asserted charges of gender discrimination based on the City's failure to promote her to the deputy director position, sexual harassment for hostile work environment resulting from Land's inappropriate actions, and quid pro quo sexual harassment relating to Land's refusal to promote her. The district court concluded that it lacked subject matter jurisdiction over the two sexual harassment claims because they were not included in the charge of discrimination Welsh filed with the EEOC. Alternatively, the court found that the hostile work environment claim was untimely. Finally, the court rejected her gender discrimination claim because she had not shown that the City's reasons for choosing Carter for the deputy director position were pretextual, nor had she otherwise shown any discriminatory intent in the City's decision not to select her for that position. On appeal, Welsh challenges all of these rulings by the district court.

## II.

### A.

Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *See Simms v. Oklahoma ex rel. Dep't of Mental*

-4-

*Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997).[2] To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to the EEOC as part of her timely filed EEOC "charge" for which she has received a right-to-sue letter. *See Simms*, 165 F.3d at 1326. The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," *id.* § 1601.12(b). The charge tells the EEOC what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. *See Seymore*, 111 F.3d at 799; *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 388 (9th Cir. 1990) (EEOC charge serves primarily as impetus to EEOC investigation and conciliation); 29 C.F.R. § 1601.14(a) (requiring EEOC generally to send copy of charge to charged party or respondent within ten days of its filing); *cf. EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) ("EEOC's investigative authority is tied to charges filed with the Commission;

---

[2] Citing *Richardson v. Frank*, 975 F.2d 1433 (10th Cir. 1991), Welsh argues that administrative exhaustion is not a jurisdictional prerequisite to a Title VII suit. *Richardson* does not support this argument. It notes only that the failure to file *timely* an administrative charge is not jurisdictional. *See id.* at 1435 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). It does not go farther and hold that exhaustion itself is not jurisdictional. While some circuits may hold otherwise, exhaustion is jurisdictional in this circuit. *See Jones*, 91 F.3d at 1399 & n.1.

unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence relevant to the charge under investigation.") (footnote and quotation omitted). Thus, requiring a plaintiff to have first presented her claims in her EEOC charge before being allowed to bring suit serves the dual purposes of ensuring the EEOC has the opportunity to investigate and conciliate the claims and of providing notice to the charged party of the claims against it. *See Seymore*, 111 F.3d at 799; *cf. Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989) ("[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.") (quotation omitted).

The formal charge that Welsh filed with the EEO on July 14, 1995--at least, as discussed below, the only one now available--stated as follows:

I. On or about August 31, 1994, I was denied the opportunity to compete for the position of Deputy Director of Emergency Management, by Ron McCalip, W/M, who is the Director of Emergency Management for the City of Shawnee and Pottawatomie County.

II. No reason was given for denying the promotion opportunity.

III.  I believe I have been discriminated against because of my sex, female, in violation of the Civil Rights Act of 1964, as amended.

Appellant's App. at 62.  As the district court recognized, the charge clearly raises a claim of gender discrimination, the only claim the court addressed on the merits. The court rejected Welsh's contention that it should be construed, either alone or in conjunction with another document she filed with the EEOC, as having raised the quid pro quo or hostile work environment claims.  On appeal, she repeats her argument that she exhausted her harassment claims under several theories--she presented her harassment claims to the EEOC in a separate document and either that was sufficient for exhaustion purposes or she should not be penalized for the EEOC's failure to "complete both the administrative and investigative aspects of the process;" Appellant's Br. at 13; the harassment claims should be considered reasonably related to her gender discrimination claim; and the harassment claims would fall within the scope of a reasonable EEOC investigation of her gender discrimination claim.

**1.**

We turn first to Welsh's latter two arguments.  "This court has adopted a limited exception to the exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the allegations in the EEOC charge."  *Simms*, 165 F.3d at 1327 (quotation omitted).

We have also held that judicial consideration of claims "not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993). [3]

Without belaboring the matter, we find it clear here that neither harassment claim comes within either of these exceptions to the exhaustion rule. Both of Welsh's harassment claims point solely at Land's actions in creating a hostile work environment and denying her a promotion because she refused to have sex with him. In contrast, her charge stated only that McCalip--not Land--denied her a promotion because of her gender, and Land is not even mentioned in the sparsely worded charge. Because her harassment claims are based on completely different allegations from her gender discrimination claim, the two types of claims are not reasonably related. *See Aramburu v. Boeing Co.*, 112 F.3d 1398,

---

[3] We need not decide at this point whether the scope of a reasonable EEOC investigation is a separate exception from the exhaustion rule or simply a part of the process for determining what allegations are reasonably related to claims stated in the charge. The Seventh Circuit takes the latter view. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (claims not expressly stated in charge may be considered exhausted where "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, *and* the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations of the allegations in the charge") (emphasis added).

1409-10 (10th Cir. 1997) (hostile work environment claim not reasonably related to wrongful discharge claim contained in EEOC charge where claims based on different allegations of impermissible conduct); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (for claims to be reasonably related, EEOC charge and judicial complaint "must, at a minimum, describe the same conduct and implicate the same individuals"); *cf. id.* at 503 ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). Further, claims falling within the reasonably related exception generally arise after another claim has been filed, but here, all of the acts of harassment occurred prior to the filing of Welsh's charge. *Cf. Seymore*, 111 F.3d at 799-800 (claim for retaliatory discharge ordinarily not reasonably related to discrimination claims contained in charge where retaliatory acts occurred prior to filing of charge). Finally, because the claims are founded on completely different allegations, a reasonable investigation of the basis for McCalip's decision would not likely reveal any facts regarding Land's acts. For these reasons, the exhaustion exceptions do not save Welsh's harassment claims.

**2.**

Welsh's primary argument that she adequately exhausted her harassment claims relies on consideration of another document, referred to as an "information sheet," that she submitted to the EEOC. She contends that either as a general rule

such additional submissions should be considered, or in this situation, the failure to include the allegations contained on the information sheet on the charge was the EEOC's fault, and she should not be penalized for its negligence. To assess this argument, we need first to discuss more of the facts surrounding her filings with the EEOC and its actions.

Welsh filed the charge from which we quoted above on July 14, 1995, but this was not her first attempt to file a charge with the EEOC. According to affidavits she and her husband filed with the EEOC after it dismissed her July 14 charge as untimely, she initially went to the EEOC office in Oklahoma City on April 27, 1995 "to file a complaint against the City." Appellant's App. at 282. Her affidavit stated that an EEOC employee, Randy Garrett, "gave me paperwork to fill out to outline my complaint. . . . When I completed the forms, I told Mr. Garrett that I was concerned about the timing of my complaint and he told me not to worry about the timing because it would be filed as of that day." *Id.*

After not hearing anything for over two months, she contacted the EEOC and learned that it did not have any record of her filing. [4] Therefore, she "returned to the Oklahoma City EEOC office on July 14, 1995 and again met with Mr.

---

[4] Her first visit to the EEOC was only a week after the bombing of the Murrah Building in Oklahoma City, and Mr. Garrett told her at that time that "all of the processors were in grief counseling due to the bombing." Appellant's App. at 282.

Garrett. Once again, he took information from me and I completed the paperwork I was given." *Id.* She was not represented by counsel at this time. *See id.* at 256. The affidavit does not explain what claims she had made in the earlier paperwork she filled out, but on June 22, 1995, she had filed a document labeled a "MAIL IN INFORMATION SHEET FOR FILING A CHARGE OF DISCRIMINATION." *Id.* at 214. On this document, she checked boxes indicating that she was making a claim for sex discrimination and that she was "denied promotion," but she did not check the box for "harassment." *See id.* at 215. However, in the narrative section of the document, she described most of the incidents involving Land on which she based her two harassment claims, in addition to discussing her gender discrimination claim. *See id.* at 215-18. This document, which bore her unverified signature dated May 16, 1995, stated at its top that "THIS IS NOT A CHARGE OF DISCRIMINATION." *Id.* at 214.

After the EEOC had initially dismissed Welsh's July 14 charge as untimely, she retained counsel who wrote to the EEOC on July 24, 1996, seeking to get her claims for "hostile work environment sexual harassment and failure to promote on the basis of sex" reinstated as timely. *See id.* at 280. The EEOC revoked its earlier decision to dismiss the charge as untimely on August 28, 1996, *see id.* at 287, and issued a right-to-sue letter on January 14, 1997, on the basis that more than 180 days had passed since the EEOC assumed jurisdiction, it had not filed

-11-

suit, and she had specifically requested the right to sue. *See id.* at 288. The record contains no other information indicating what EEOC understood Welsh's claims to be, the scope of its investigation, or even if it undertook one. Terry Powell, the city manager, stated in his deposition that he was aware from the EEOC of only the gender discrimination claim contained in the charge, which apparently had been sent to the City, and not of her other claims. *See id.* at 247.

We agree with Welsh that the information sheet contained allegations supporting her harassment claims. [5] The EEOC had the information sheet at the time the formal charge was prepared on July 14, 1995, or at least, had received it by that time since it bears the EEOC's June 22 "received" stamp. The question thus becomes whether the district court should have considered it in determining whether she had exhausted the harassment claims.

As explained earlier, the formal charge is the key document in getting the Title VII process rolling. By statute and regulation, it must be in writing and signed under oath or affirmation, *see* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9, and it must describe the practices complained of, *see id.* § 1601.12(b). It therefore is the primary, and usually the only, place to which courts look to determine whether a plaintiff timely and properly exhausted her claims before the

---

[5] We do so despite the fact that her own attorney, in seeking to have her claims reinstated as timely, characterized the harassment claim as being only for hostile work environment, not quid pro quo.

EEOC.  Because it is the only document that must be sent to the charged party, it is the only document that can satisfy the notice requirement.  Nonetheless, relevant to Welsh's contentions, our sister circuits in two related situations have considered documents submitted to the EEOC other than the charge in determining whether claims have been adequately presented to the EEOC. [6]

_____

[6]    The issue most often arises in cases focusing on the timeliness of a plaintiff's EEOC filing, and courts often must address the relationship between the charge and an "intake questionnaire," a document that appears to be similar to the information sheet at issue in this case.  Intake questionnaires precede the filing of a formal charge, and describe the alleged improper conduct, but often are not signed at all, and critically like the information sheet here, are not verified. *See, e.g.* , *Shempert v. Harwick Chem. Corp.*  , 151 F.3d 793, 796 (8th Cir. 1998), <u>cert. denied</u> , 119 S. Ct. 1028 (1999);  *Philbin v. General Elec. Capital Auto Lease, Inc.* , 929 F.2d 321, 322 (7th Cir. 1991).  Courts are split on how to deal with the two documents.  The Eighth Circuit generally rejects the notion that they should be read together such that a verified charge filed after the filing deadline relates back to the intake questionnaire and makes the questionnaire a timely filed charge.  *See, e.g.* , *Shempert* , 151 F.3d at 796-98.  The Seventh Circuit has held that a timely filed questionnaire followed by an untimely but verified charge "may be sufficient to constitute a charge in some circumstances,"      *Philbin* , 929 F.2d at 323, such as where the plaintiff and EEOC both treated the questionnaire as the charge, *see id.* at 324.  In this circuit, we have held that a subsequently filed formal charge may amend the plaintiff's unverified but timely filed EEOC "complaint" under 29 C.F.R. § 1601.12(b), at least where there is no showing of prejudice to the charged party.   *See  Peterson v. City of Wichita*  , 888 F.2d 1307, 1308-09 (10th Cir. 1989);   *but cf.  Simms* , 165 F.3d at 1327 (rejecting attempt to add new claim to timely filed charge through late amendment).

None of these cases sheds much light on the present situation--the effect of the EEOC's possession of an informal document containing substantive claims not contained in the party's timely filed formal charge.  In the most analogous case we have been able to locate, the court rejected the plaintiff's argument that the questionnaire should be construed as having adequately raised her hostile

(continued...)

-13-

First, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502. Second, plaintiffs should not be penalized for the EEOC's negligence in handling a claim. *Cf. Diez v. Minnesota Mining and Mfg. Co.*, 88 F.3d 672, 677 (8th Cir. 1996) (indicating that EEOC negligence in handling ADEA claim under similar statutory filing scheme could excuse failure to file formal charge timely); *Philbin*, 929 F.2d at 325 ("EEOC's inaction in completing and forwarding the formal charge in a timely fashion should not bar the plaintiff from proceeding on her Title VII claim."). Both of these situations require a plaintiff to demonstrate that she intended that the EEOC investigate the allegations not included in the formal charge. Welsh has not done so.

Welsh's submission of the information sheet to the EEOC may be some indication that at some point she intended it to investigate her harassment allegations. However, her subsequent filing, under oath, of the charge clearly containing allegations against only McCalip regarding gender discrimination

---

[6](...continued)
work environment claim for exhaustion purposes where the charge itself raised only discrimination claims. *See Park v. Howard Univ.*, 71 F.3d 904, 909-10 (D.C. Cir. 1995). Similar to this case, the questionnaire in *Park* stated on its face that its filing did not guarantee the filing of a formal complaint, and it was not signed under oath. *See id.* at 909-10. Unlike this case, however, the questionnaire was filed with a local agency rather than the EEOC, and "there was no evidence that [the charged party] or the EEOC ever had access to the questionnaire, so it could not have fulfilled the purpose of the required administrative charge." *Id.* at 909.

-14-

effectively negated the information sheet. Although she was without counsel at the time, anyone reading the charge would realize that it did not include allegations regarding Land's inappropriate actions. Moreover, at the time she prepared the charge, she understood that the EEOC had lost the documents she previously filed; there is no indication that she thought the July 14 charge in any way supplemented rather than replaced the previously filed documents, including the information sheet. [7] Thus, the only reasonable view of her intent when she filed the formal charge is that she intended to assert only the gender discrimination claim involving McCalip; there is no "clear" indication, *Cheek*, 31 F.3d at 502, that she also intended to assert the harassment claims involving Land.

Additionally, she has presented no evidence to support her contention that the harassment claims were omitted from the charge due to the EEOC's negligence. Welsh has never stated whether the allegations of harassment were contained in the original charge, or whether that charge was the same as or different from the later one. There is no evidence that she told EEOC employee Garrett she wanted to include the allegations against Land in the July 14 charge,

---

[7] The information sheet in the record bears the EEOC's receipt stamp dated June 22, 1995, but when Welsh contacted the EEOC "over two months" after her original filing on April 27, the EEOC did not have any information relating to her claim. *See* Appellant's App. at 282. The record contains no information indicating when or where the information sheet was subsequently located.

or that Garrett or any other EEOC employee told her that the charge covered her allegations against Land and her harassment claims. Her argument presupposes that the EEOC drafted the language on the charge, yet her affidavit states only that Garrett "took information from me and I completed the paperwork I was given." Appellant's App. at 282. Indeed, Welsh has presented no evidence regarding the EEOC's understanding of her allegations and claims, its response to them, or the scope of any investigation it may have performed. Curiously, she has never explained why she filed the information sheet, which states at the top "THIS IS NOT A CHARGE OF DISCRIMINATION," *id.* at 214, or how it related to the charge she had previously filed, nor has she stated that she was misled by the EEOC in any way as to its effect. *See Philbin*, 929 F.2d at 324-25. Although the City's answer to her complaint alleged that she never raised her harassment claims administratively and its summary judgment motion further elaborated on this contention, her affidavit in opposition to summary judgment vaguely stated only that "[o]n April 27, 1995, I went to the [EEOC] office in Oklahoma City, Oklahoma to file a complaint against the City of Shawnee and fully completed all the necessary documents as I was instructed to by the investigator." *Id.* at 256. And again what is most telling, Welsh has never explained why, after she filed the information sheet containing the allegations against Land, she then filed the formal charge clearly containing only allegations against McCalip regarding

gender discrimination.

We are well aware that "Title VII is remedial legislation to be construed liberally rather than technically," *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir. 1989), particularly at stages of the proceedings where the complaining party is usually without counsel, *see Love v. Pullman Co.*, 404 U.S. 522, 527 (1972). But even were we to adopt the other circuits' bases for looking to documents beyond the charge itself to determine what claims were exhausted, we would not hold that Welsh exhausted her harassment claims. Although without counsel at the time of her complaints to the EEOC in 1995, she had counsel in the district court and is also represented by counsel on appeal. Yet she has not produced evidence showing that she intended the EEOC to investigate her allegations against Land, that the failure of the charge to include the allegations of harassment was the EEOC's fault, or even that she understood the charge to include her harassment claims. Filing the information sheet itself is not enough, particularly in light of the subsequently filed and more limited formal charge. There is a difference between making allegations of an individual's improper conduct, even in writing, and asserting formal charges under oath, against a current boss, regarding that conduct. In short, Welsh has simply not produced the

evidence needed to demonstrate she exhausted her harassment claims. [8]

**B.**

To prove her claim of gender discrimination, Welsh had the initial burden of establishing a prima facie case of discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997). To establish a prima facie case of gender discrimination under Title VII, Welsh was required to show that there was a promotional opportunity available that was filled by a male, that she was qualified for the promotion, and that despite her qualifications, she was not promoted. *See Burdine*, 450 U.S. at 252-53 & n.6; *Sprague*, 129 F.3d at 1362. Here, the City did not challenge her presentation of a prima facie case, and the burden then shifted to it "to rebut the presumption of discrimination by producing

---

[8] Alternatively, we agree with the district court that her hostile work environment claim was untimely. She testified that the last inappropriate act by Land occurred no later than January 1994, and she did not file her EEOC claim (filed with both the EEOC and the Oklahoma Human Rights Commission) until April 1995, thus not meeting the statutory 300-day limitations period. *See* 42 U.S.C. § 2000(e)-5(e)(1). Welsh contends that her claim was timely under the continuing violation theory, *see, e.g.*, *Martin*, 3 F.3d at 1415-16, and points to one event prior to her EEOC filing and several after as evidence of continuing hostile environment. The first, Carter's selection for the deputy director position in August 1994, is relevant to her quid pro quo and gender discrimination claims but not to her hostile work environment claim. The latter events, Land's possession of allegedly pornographic magazines in his desk drawer to which she had access and the city manager's alleged failure to investigate discrimination charges adequately, occurred too late to affect the timeliness of her EEOC filing.

evidence that [Welsh] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine* , 450 U.S. at 254. Its nondiscriminatory reason for selecting Carter for the position was the changing requirements of the City's finance department and the emergency management department's need for someone with his advanced computer skills. The burden then reverted to Welsh to show that the proffered reason was pretextual and not the true reason for Carter's selection or to otherwise show that she was a victim of intentional discrimination. *See id.* at 256; *Randle v. City of Aurora* , 69 F.3d 441, 451 (10th Cir. 1995).

Welsh points to several alleged facts showing that the City's reason for not promoting her was a pretext for gender discrimination. First, the City had created an "expectation" in her that she would eventually become the deputy director of the emergency management department through McCalip's grooming her for the position and Land's telling her she would get the position if McCalip could be forced out. Second, the City violated its own personnel policies by failing to advertise and solicit applications for the position. Third, the City allowed the alleged sexual harasser, Land, to select Carter for the position. And finally, the City has allowed other alleged acts of gender discrimination against another woman and retaliation against a male.

None of these acts or incidents, even considered together, shows pretext or

intentional discrimination. As the district court noted, the actions creating Welsh's "expectation" took place over two years prior to Carter's being selected for the position. At most, they might indicate bad faith on the City's part, but not pretext or discrimination. The City's failure to follow its own policies in advertising and filling the position "disadvantaged all potential applicants, and thus, in and of itself, does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination." *Randle*, 69 F.3d at 454 n.20. We fail to see how Land's participation in the selection procedure, while possibly relevant to a quid pro quo claim, demonstrates pretext or discrimination.

The allegations of discrimination and retaliation against other employees similarly do not show pretext or intentional discrimination. The allegation that Land retaliated against a male employee he thought was disloyal is irrelevant to Welsh's claim of gender discrimination. The evidence that a female coworker, Dana Scheuerman, thought she had been subjected to gender discrimination presents a closer question, but we conclude it is inadequate to preclude summary judgment. Welsh submitted copies of two charges Scheuerman filed with the EEOC alleging gender discrimination for paying her less than male counterparts in acting positions and for failing to promote her to personnel director. Scheuerman also stated in an affidavit that she believed she had been subject to

-20-

gender discrimination regarding her salary as acting personnel director.

While testimony by other employees regarding their opinion that they had been subjected to discrimination may be relevant in certain circumstances, *see Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990), the issue here is not the relevance of Scheuerman's allegations but their sufficiency, by themselves, to show pretext or intentional discrimination. In the only analogous case of which we are aware, the court held that testimony in an age discrimination case that two other employees retired because they felt the employer discriminated against them based on age, *combined* with "the statement by the Company's President and Chairman that the Company wished to eliminate its older workers," was sufficient to demonstrate pretext and preclude summary judgment. *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985). Scheuerman's allegations lack this strong corroborative support. At most, they might suffice to make a prima facie showing of discrimination in her own case, but we conclude that by themselves, they are insufficient to show pretext here.

**III**.

We conclude that the district court correctly concluded that it did not have subject matter jurisdiction over Welsh's sexual harassment because she failed to present them to the EEOC, and that she failed to meet her burden of demonstrating intentional discrimination so as to avoid summary judgment in the

-21-

City's favor on her gender discrimination claim. The judgment of the district court is therefore AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge