Marsha Lynne COLEMAN–
ADEBAYO, Plaintiff,

v.

Michael O. LEAVITT, Administrator,
United States Environmental Pro-
tection Agency, Defendant.

No. CIV.A.03–2428 PLF.

United States District Court,
District of Columbia.

July 26, 2004.

Bruce J. Terris, Michael George Shaw, Terris, Pravlik & Millian, LLP, Washington, DC, for Plaintiff.

Beverly Marie Russell, U.S. Attorney's Office, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction and the defendant's motions to dismiss and for summary judgment. The plaintiff is employed at the Environmental Protection Agency ("EPA") and claims that she has been discriminated against on the basis of disability and in retaliation for pursuing past claims of discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The plaintiff asks for a preliminary injunction ordering EPA to allow her to work from home, which she considers to be a reasonable accommodation of her disabilities. The defendant counters by arguing that the plaintiff failed to exhaust her administrative remedies and thus cannot prevail on her underlying action and that, in any event, the plaintiff is not disabled and has not been subjected to any adverse employment action.[1] For the reasons that follow, the Court will deny the preliminary injunction and the motion to dismiss, but

---

1. The defendant in this suit is the Administrator of EPA in his official capacity. This Opinion occasionally refers to the defendant as "EPA."

will grant the defendant's motion for summary judgment.

## I.  BACKGROUND

The plaintiff, Marsha Coleman–Adebayo, Ph.D., holds a doctorate in political science from the Massachusetts Institute of Technology, with a specialization in African and international affairs.  She began working for EPA in August 1990, and was employed as an Environmental Protection Specialist in the Office of Prevention, Pesticides and Toxic Substances, Office of Pollution Prevention and Toxics, Pollution Prevention Division, Prevention Analysis Branch during the period relevant to this suit.

The plaintiff suffers from a variety of ailments, including multiple sclerosis, glaucoma, optic neuritis and hypertension. She claims, with supporting documentation from her doctors, that the stress of working in an EPA facility exacerbates these maladies and causes considerable risk to her health.  In 2000, the plaintiff asked EPA to permit her to work from home as an accommodation for these disabilities. After she filed a motion for a temporary restraining order seeking to require EPA to provide her the accommodation, EPA acceded to the request, without acknowledging the validity of her claims, while the parties attempted to negotiate a resolution of the matter.  The plaintiff has worked from home since January 2001.

The plaintiff has alleged several instances of discrimination and retaliation by EPA in five administrative complaints and two lawsuits over the past six years, not including the present action.  The complaint most closely related to her current allegations of discrimination is the one she filed on March 2, 2001.  In that complaint, she charged that EPA's failure to allow her to work at home and assigning her duties outside her area of expertise consti-

tuted disability discrimination and retaliation.  Specifically, according to that complaint, the charges were:

> Race, color, sex, reprisal, handicap discrimination, hostile work environment when in mid to late October 2000:(1) managers (Dr. MaryEllen Weber and Dr. William Sanders) created a hostile work environment because (a) I filed complaints against the Office of Pollution Prevention and Toxics (b) testified before Congress and (c) won a jury verdict against the Agency (2) Dr. MaryEllen Weber and Dr. William Sanders refuse to provide medical flexiplace or reasonable accommodation for medical conditions. (4)[sic] Dr. Sanders' reply to the letters from the cardiologist was to "suspect" any decision on the cardiologist medical request and (5) Dr. MaryEllen Weber created a memo, retaliatory in nature, indicating that you were not successfully carrying out your current assignment to conduct research in the areas of environmental epidemiology and toxicology (6) given a letter of reprimand out of retaliation for participating in protected activity (7) extension of 120 day detail to office of pollution prevention and toxics (8) additional extension of 120 day detail in February (9) did not receive office equipment agreed to (in order to carry out essential functions of my duties) agreed to [sic] through an out of court agreement between the EPA, Department of Justice and my attorney that I would work at home (see LaFone e-mail message dated 2/27/01). (10) refusal to provide reasonable accommodation for optic neuritis and MS.

EPA Report of Investigation, Exhibit 1–C, Plaintiff's Complaint of Discrimination ("Compl. of Discrim.") filed March 2, 2001 at 4.

The plaintiff's administrative complaints, including the one excerpted above, were the subject of a protracted mediation that ended after thirty-two months on November 4, 2003, without a resolution satisfactory to either party. Two days later, Ms. Bridget C. Shea, Senior Policy Advisor in the EPA Office of Administration and Resources Management, wrote a letter to the plaintiff, which stated that in light of the unsatisfactory conclusion of the mediation, Dr. Coleman–Adebayo could no longer remain at home and would be required to return to work at an EPA office.

The plaintiff's attorney notified Ms. Shea on November 18, 2003, that plaintiff intended to bring suit to prevent EPA from ordering plaintiff back to an EPA office. Three days later, Mr. Thomas Murray, the plaintiff's direct supervisor, reassigned plaintiff to a different position in the Office of Cooperative Management, to take effect December 1, 2003. The new position—which would require her to work at an EPA facility, albeit a different office from the one in which she had experienced medical problems in the past—purportedly was developed with the plaintiff in mind. The duties remain undefined at this time, but involve senior policy making and do not encompass a managerial role over other employees. The title seems to have settled on "Program Analyst." The plaintiff alleges that the new position strips her of her union representation in addition to requiring her to work in an environment that will cause her stress, which will trigger health problems. Plaintiff views the timing of the reassignment as an indication that the reassignment was made in retaliation for her planned suit.

Plaintiff filed this action on November 24, 2003, after being ordered back to work. She moved for a temporary restraining order to prevent EPA from requiring her to work in an EPA facility. In response, EPA agreed to allow her to continue working from home until this Court rules on the motion for a preliminary injunction. On February 13, 2004, the plaintiff filed an administrative complaint alleging disability discrimination and retaliation in the reassignment to her new position. The Court heard argument on the plaintiff's motion for a preliminary injunction, as well as on EPA's motions to dismiss and for summary judgment on April 19, 2004.

## II. DISCUSSION

In this lawsuit, plaintiff alleges (1) discrimination in EPA's refusal to accommodate the plaintiff's disabilities, as she requested in her 2001 EEOC complaint, and (2) retaliation in EPA's reassignment of her to the Program Analyst position in November 2003. Failure to provide reasonable accommodations for disabled employees is a violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* Title VII of the Civil Rights Act prohibits agencies from discriminating against employees for pursuing a good faith, reasonable charge of discrimination, whether the final determination finds discrimination or not. *See* 42 U.S.C. § 2000e–3(a). EPA offers several defenses. The agency argues that this action should be dismissed for plaintiff's failure to exhaust her administrative remedies, that the plaintiff is not impaired in a major life activity and therefore is not entitled to the protections against disability discrimination, that the plaintiff has not suffered an "adverse employment action," and that the plaintiff was not the subject of retaliation.

■ Although the posture of the case is in the form of plaintiff's motion for a preliminary injunction, consideration of EPA's defenses—many of which go to the merits of the dispute—is required at this stage of the litigation for three reasons. First, EPA has moved to dismiss the action. If

it is appropriate to grant the motion and dismiss the case, the question of the preliminary injunction need not be reached. Second, EPA has moved for summary judgment. The Court therefore must consider the merits of the suit to determine whether there are genuine issues of material fact and whether it is appropriate to grant judgment for EPA as a matter of law. Third, even if the only issue resolved were whether to grant the preliminary injunction, one crucial factor in determining whether to grant such a motion is the plaintiff's likelihood of success on the merits. *See, e.g., Katz v. Georgetown Univ.,* 246 F.3d 685, 688 (D.C.Cir.2001).[2] It therefore is necessary to determine the strength of the plaintiff's case.

### A. *Exhaustion of Administrative Remedies*

EPA argues that this case should be dismissed for failure to exhaust administrative remedies, and that plaintiff's failure to exhaust makes it unlikely that she will prevail on the merits, making the grant of a preliminary injunction inappropriate. The plaintiff contends that her exhaustion of administrative remedies concerning other instances of alleged discrimination—particularly her filing of the 2001 administrative complaint—suffices to comply with the exhaustion requirements of Title VII and the Rehabilitation Act. According to plaintiff, she is exempt from the need to re-exhaust if her current complaint is "like or reasonably related to" a prior administrative complaint. *See Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995).

Because her complaint filed in this Court states nearly identical grounds for believing that she was the subject of discrimination as the grounds stated in the 2001 complaint, plaintiff argues that this lawsuit flows directly from the agency denial of the relief she sought in 2001, and that, with the conclusion of mediation, the administrative process now has been exhausted. Because the current complaint alleges that the plaintiff was retaliated against in part for her filing of the 2001 complaint, plaintiff argues that the claim of recent retaliation is "like or reasonably related to" the 2001 complaint and therefore that no exhaustion is required.

Concededly, the plaintiff has not gone through the administrative process for the specific events giving rise to this suit. Until February 2004, she had filed no complaint that cited her November 2003 reassignment and the order given to her to report to work at EPA. Ordinarily, this failure would preclude her from bringing suit in court on a discrimination-in-employment claim until the administrative process has come to a conclusion or until 180 days have passed from the filing of the administrative complaint. *See* 42 U.S.C. § 2000e–16(c) (stating that claimants charging their federal government employer with discrimination under Title VII must exhaust their administrative remedies); 29 U.S.C. § 794a(a)(1) (incorporating Title VII's remedies for Rehabilitation Act claims); *Park v. Howard Univ.,* 71 F.3d at 907.

Plaintiff argues, however, both that she is in Court on the 2001 complaint, not on

**2.** In addition to the merits assessment, the Court also must consider whether the party requesting the injunction will be irreparably harmed in the event the injunction is denied, whether the opposing party will be substantially injured by the injunction, and whether the public interest would be served by the injunction. *See Serono Labs., Inc. v. Shalala,* 158 F.3d 1313, 1317–18 (D.C.Cir.1998). The factors, including likelihood of success on the merits, "interrelate on a sliding scale and must be balanced against each other. 'If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.' " *Id.* at 1318 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)).

the February 2004 complaint, and that if the inflexible exhaustion rule proposed by EPA were applied strictly, a discrimination claimant would have to replicate the administrative process any time her situation changed in the slightest. Because exhaustion in such circumstances is inefficient for both the administrative process and the judicial process, and is unfair to a claimant who is perpetually in the administrative realm when he or she wishes to be in court, plaintiff argues that she need not re-exhaust each instance of discrimination. Plaintiff's argument is more expansive than that accepted by most courts, but she draws some support from decisions of courts that have held that where a complaint filed in court is "like or reasonably related to" an administrative claim that has been exhausted, the prerequisite to suit has been satisfied. *See Park v. Howard Univ.*, 71 F.3d at 907; *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986).

### 1. Plaintiff's Retaliation Claim

██ Plaintiff's retaliation claim satisfies the *Park v. Howard University* test because the original discrimination claims filed with the agency effectively put the defendant on notice of the facts and circumstances relating to her potential later claim of retaliation. *See Hunt v. D.C. Dep't of Corrections*, 41 F.Supp.2d 31, 37 (D.D.C.1999). The plaintiff alleges that EPA ordered her back to work as punishment for pursuing her administrative claims of discrimination, for which the exhaustion requirement undisputedly is satisfied. *Ipso facto*, the current retaliation claim is "like or reasonably related to" the administrative complaints she alleges were the trigger for the retaliation. *See, e.g., Clockedile v. New Hampshire Dep't of Corrections*, 245 F.3d 1, 5–6 (1st Cir.2001); *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir.1999).

Unfortunately for the plaintiff, *Park* no longer reflects the state of the law. The Supreme Court's intervening decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), rejected plaintiff's view and instead held that each discrete adverse employment action individually triggers Title VII's procedural requirements. In *Morgan*, the plaintiff alleged several acts of racial discrimination and retaliation throughout his tenure working at AMTRAK culminating in his firing, and also alleged a racially hostile work environment. The Court held that only those acts occurring within the limitations period were actionable, regardless of any connection between the earlier acts and the ones about which he had filed a timely complaint. As the Court stated, "discrete discriminatory acts are not actionable if time barred, *even when they relate to acts alleged in timely filed charges.*" *Id.* at 113, 122 S.Ct. 2061 (emphasis added). The Court held that a different rule applied to hostile-work-environment claims, as such a claim does not "occur" at a particular time, when the filing period could be said to begin. For hostile-work-environment claims, then, discriminatory acts may be used by a plaintiff in proving the claim, even if those actions occurred outside of the filing period. *See id.* at 115–21, 122 S.Ct. 2061; *see also Singletary v. Dist. of Columbia*, 351 F.3d 519, 526–29 (D.C.Cir. 2003). The Court did not decide how to treat allegations of a pattern or practice of discrimination. *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. at 115 n. 9, 122 S.Ct. 2061.

The key to determining whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another claim that has satisfied those requirements, is whether the claim is of a "discrete" act of discrimination or retaliation or, instead, of a

hostile work environment. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. at 114, 122 S.Ct. 2061. Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.

Individual acts of retaliation that form the basis of retaliation claims also are included within the Supreme Court's list of discrete discriminatory acts, and therefore any claim stemming from those acts must be administratively exhausted. Indeed, the Court's examples were given without regard to the specific discriminatory motivation for the action; it was the type of action itself that was determinative. This approach makes sense, for the focus is on whether a court can discern the date of an act's "occurrence." Retaliation is another type of discrimination under Title VII, one that is equivalent to the prohibition on sex and race discrimination; Title VII proscribes discrimination against an employee for a protected act of exposing an employer's previous discrimination. *See* 42 U.S.C. § 2000e–2(a) (proscribing race, color, religion, sex, and national-origin discrimination); and § 2000e–3(a) (proscribing discrimination taken against an employee "because he has opposed any

practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"); *see also* 42 U.S.C. § 2000e–5(a) (providing the EEOC with authority to prevent "any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title").

Plaintiff offers no reason for the Court to treat most retaliation claims, including hers, differently from other complaints of discrete acts. Indeed, plaintiff's complaint itself is evidence enough that each recent act of alleged retaliation in this case is a discrete act: the mediator's oral statement to plaintiff's counsel on October 8, 2003 (Complaint ¶ 24); and Ms. Shea's letter to plaintiff dated November 6, 2003, directing her back to work at an EPA office on December 1, 2003 (Complaint ¶ 24). In short, there is no relevant distinction between *Morgan*'s holding that plaintiffs may not revive a stale discrimination claim by tying it to a timely-filed claim, and defendant's argument here that the plaintiff should not be permitted to avoid the requirement of exhaustion merely because this latest act of alleged discrimination—arbitrarily removing the reasonable accommodation of working at home in retaliation for filing discrimination complaints—is tied to earlier, exhausted complaints.[3] Accord-

---

**3.** One of course can conceive of circumstances in which multiple acts of discrimination or retaliation occur after the act giving rise to the initial administrative charge, each of which is tied to the same discriminatory decision. For example, suppose a religious employee complained of discrimination when his employer refused to permit him time off to attend weekly religious services, and in response the employee filed a claim with the EEOC. Thereafter the employer denied him leave to attend services every week. Each refusal could be viewed as a new act of discrimination or as retaliation for filing the

complaint. The alleged discrimination or retaliation would manifest itself each week, and yet there would be a single discriminatory decision. To require the employee to exhaust administrative remedies as to each weekly denial of time off would seem to put an excessive burden on plaintiffs. Instead, the employee can file a charge when the initial, final decision is made, or after the other, later acts, so long as those acts are independently discriminatory. While it is not clear how the Supreme Court would evaluate the exhaustion requirement in such a scenario, one can

ingly, in light of *Morgan* the Court concludes that the plaintiff has not exhausted her claim of retaliation that stems from EPA's November 2003 transfer of the plaintiff to an EPA office. The Court therefore will grant defendant's motion to dismiss plaintiff's retaliation claim.

### 2. Plaintiff's Discrimination Claim

■ The present action also raises a claim of disability discrimination. The defendant argues that any portion of plaintiff's claim of discrimination that concerns defendant's recent order to plaintiff to return to work is a new claim of discrimination that must be exhausted. The Court disagrees. After mediation on the administrative complaint failed to resolve the matter, EPA denied the plaintiff's 2001 request for home accommodation by ordering her back to an EPA office. EPA's recent action was not a new act of discrimination, but instead constituted defendant's constructive—albeit delayed—final decision with respect to plaintiff's 2001 EEOC complaint. The plaintiff's disability claim and request for accommodation, which she exhausted in her 2001 EEOC complaint, does not somehow become "unexhausted" because defendant stayed its hand during the 32 months of mediation. Were the Court to accept this proposition, agencies could defeat exhaustion by delaying their decisions under the guise of mediation.

Furthermore, notwithstanding mediation plaintiff was free to come to Court once 180 days had elapsed from the filing of her administrative complaint. *See* 42 U.S.C. § 2000e–5(e)(1). Plaintiff filed her EEOC complaint on March 2, 2001; she thus had the right to come to court as early as August 29, 2001. *See* Compl. of Discrim. Plaintiff did not have to wait until the agency "officially" decided or dismissed the 2001 administrative complaint, which it did only after this action was brought in court.[4]

The Court's conclusion that plaintiff's discrimination claim is not a new, unexhausted claim is bolstered by the fact that the plaintiff now is seeking the same relief that she sought in 2001. In her EEOC complaint, the plaintiff maintained that she was improperly denied "flexiplace," a program permitting certain employees to work from home when medically necessary. *See* EPA Report of Investigation dated September 16, 2001 at 1. She claimed that her disabilities, in particular multiple sclerosis, optic neuritis, and hypertension or high blood pressure, made it difficult for her to work from the office, and that working at home would be a reasonable accommodation for her disabilities. *See id.* at 14–18; Compl. of Discrim. at 4. The essence of her discrimination complaint filed in this Court is that in ordering her back to an EPA office, the defendant denied her the ability to work at home that she originally requested in 2001, and that she continues to need to work at home because of her multiple sclerosis, hypertension, glaucoma and optic neuritis. The cited disabilities and the requested accommodation are virtually identical in both the 2001 administrative complaint and the one now before the Court. The agen-

---

imagine situations in which the discriminatory acts or retaliatory conduct is so pervasive and ongoing that the exception to exhaustion recognized in *Morgan* for hostile-work environment cases may be applied directly or extended by analogy.

4. Plaintiff did file another administrative complaint in February 2004, reciting the spe-

cific acts of alleged discrimination that occurred in November and December 2003. That complaint is of no moment, however, for counsel has represented that plaintiff filed it as a backstop measure in case the Court dismissed this action for failure to exhaust. It was not a concession that exhaustion was lacking and that dismissal would be proper.

cy had its opportunity to deal with the complaint administratively; and in ordering plaintiff back to an office after the unsuccessful completion of mediation, EPA disposed of the matter as far as the agency was concerned. Plaintiff is now entitled to a judicial forum for her disability claim.

It is true that in a disability discrimination complaint where the alleged disabilities are chronic and/or degenerative, the plaintiff's disability may change over time such that an accommodation once "reasonable" becomes not so; and some disabilities are temporary phenomena. It therefore is possible that a disability claim brought years ago may not accurately reflect the disabled person's needs or limitations, and the time lag—whether caused by mediation or something else—may justifiably lead an employer to contemplate whether it is necessary to continue an accommodation put in place years earlier. EPA therefore has a plausible argument that at least a portion of the complaint now before the Court is different from the administrative claims plaintiff may have exhausted in view of both the time lag between the plaintiff's administrative complaints filed in 2000 and 2001 and the complaint filed in this Court, and the fact that the decision to order her back to work at an EPA office in November 2003 was made by different people from those involved in her 2000 and 2001 complaints.

The Court ultimately finds this argument unpersuasive, however, because EPA has offered nothing to suggest any alteration in the plaintiff's medical condition has occurred that would lead EPA to think that the work-from-home accommodation is no longer needed. So far as the Court is aware, EPA has not asked that plaintiff be examined by a physician again, and has offered no reason other than the time lapse since the earlier diagnoses to disbe-

lieve the representations of plaintiff's doctors that she is disabled, though fully capable of performing her job, and that her health would be jeopardized by requiring her to work in an EPA facility. On the contrary, EPA's acquiescence in allowing the plaintiff to work from home since 2000, and that fact that the nature of the plaintiff's maladies makes them unlikely to lessen over time, permit the inference that the plaintiff remains unable to work in an EPA facility for the same reasons that were present in 2000.

The defendant's motion to dismiss on the ground of exhaustion therefore must be granted in part and denied in part. Insofar as the complaint challenges her reassignment in November 2003 as illegal retaliation, the plaintiff has failed to exhaust her administrative remedies and the retaliation claim therefore must be dismissed under *Morgan*. Plaintiff's claim that denying her the ability to work from home—an accommodation she requested in 2001—violates the Rehabilitation Act will not be dismissed, however. It remains to be determined whether the plaintiff is entitled to a preliminary injunction on her disability discrimination claim, and whether defendant is entitled to summary judgment.

### B. The Merits of Plaintiff's Disability Discrimination Claim

The defendant argues that plaintiff's likelihood of success on the merits is minimal or non-existent because the plaintiff cannot establish that she is disabled or that working from home is a reasonable accommodation for her particular disability. Although the Court finds that plaintiff has provided evidence of a disability, plaintiff's requested accommodation does not mitigate the effects of a disability within the meaning of the Rehabilitation Act, and

plaintiff therefore is not entitled to relief.[5]

For an individual to prevail on a disability discrimination claim, he or she must be "disabled." Specifically, the individual must have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). *See also* 29 U.S.C. § 791(g) (incorporating standards of the Americans with Disabilities Act of 1990); *Bragdon v. Abbott*, 524 U.S. 624, 630–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). When a person is disabled, his or her employer must provide a "reasonable accommodation" for that employee who is an otherwise qualified individual. *See* 29 U.S.C. § 791(b); 42 U.S.C. §§ 12112(a), (b)(5)(B); 29 C.F.R. § 1614.203(c)(1); *Carr v. Reno*, 23 F.3d 525, 528–29 (D.C.Cir. 1994). EPA maintains that the plaintiff is not disabled, arguing that if the plaintiff can perform her work at home, as she claims she can, she must not be substantially limited in her ability to work. The plaintiff does not contest this, but asserts that she is substantially limited not in the ability to work, but in the major life activities of breathing, walking, and seeing, through the effects of multiple sclerosis,

glaucoma, optic neuritis and hypertension. *See* Transcript of Motions Hearing of April 19, 2004 at 28 ("On disability our argument focuses on breathing, seeing, and walking. Not on working.").

In her arguments plaintiff invokes four conditions in support of her claim of disability and her request for a reasonable accommodation—multiple sclerosis, glaucoma, optic neuritis and hypertension. The complaint she filed in this Court, however, only seeks an accommodation of working at home for her hypertension, or elevated blood pressure, and the related stress. In support of this claim, her cardiologist, Dr. Kanovsky, has opined that work "in the stressful environment at the EPA" has made her blood pressure difficult to control and recommends work at home. Complaint ¶ 35. *See also id.* (Dr. Kanovsky has stated that plaintiff "should be allowed to work at home in order that her blood pressure could be controlled"). Her ophthalmologist also recommends working at home—not because of her optic neuritis or glaucoma, but because "[w]orking at home has been beneficial for the patient as this is a stress-free environment for her." *Id.* ¶ 36.[6]

---

**5.** EPA has offered little to show affirmatively that the plaintiff lacks a disability stemming from her multiple sclerosis, glaucoma or optic neuritis. Perhaps if there were a trial, EPA would be able to demonstrate that the plaintiff's evidence is so unreliable as to indicate that plaintiff does not suffer from any disabilities. Nevertheless, at this stage, the plaintiff's evidence of impairment in seeing and walking is uncontested, and the Court finds that the plaintiff has established a likelihood of success on the *existence* of a disability. As will be discussed, however, this does not defeat defendant's motion for summary judgment on the merits of plaintiff's claim.

**6.** The plaintiff has informed the Court by affidavit filed May 14, 2004, that following oral argument in this matter she attempted to attend a "team-building meeting" held in Cambridge, Maryland, for a team of approximately

twenty EPA employees. According to plaintiff, the stress of the event was such that she was hospitalized with symptoms of eye pain, dizziness, fatigue, nausea, an accelerated heart rate and high blood pressure. Should this be established at trial, it likely would indicate that an accommodation other than having the plaintiff work from home would not provide the plaintiff with a means to accomplish work notwithstanding her disabilities. It might also establish that the plaintiff is incapable of performing any work that requires face-to-face meetings with other people, thereby calling into question the reasonableness of an accommodation that would relieve her of that responsibility. In this context, it is worth noting that some courts have found it unreasonable to demand that employers provide stress-free workplaces as an accommodation for employees. *See Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 442

■ Accordingly, whether plaintiff is entitled to relief depends on whether her hypertension or high blood pressure is a disability, or, in the words of the statute (tailored to plaintiff's claim) whether her hypertension substantially limits her in the major life activities of walking, seeing and breathing. *See* 42 U.S.C. § 12102(2)(A); 29 U.S.C. § 791(g). It is not disputed that plaintiff suffers from hypertension. Plaintiff concedes, however, that her blood pressure is controlled by her medicine such that her hypertension does not affect her, except when she is subjected to the stress of working in an EPA facility. This concession defeats plaintiff's claim.

Under the Supreme Court's decision in *Sutton v. United Air Lines, Inc.*, it is clear that an impairment does not limit a major life activity—and thus is not a disability—if it is corrected or mitigated. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 481–82, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). As the Court stated in *Sutton*: "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. at 482–83, 119 S.Ct. 2139. *See also Koch v. McPhie*, Civil Action No. 01–0875(PLF), Opinion at 10 (D.D.C. Mar. 31, 2004). Persons whose impairments are largely corrected by medication therefore are not "disabled" within

the meaning of the Act. *See Sutton v. United Air Lines, Inc.*, 527 U.S. at 486, 119 S.Ct. 2139; *see also id.* at 494–95, 119 S.Ct. 2139 (Ginsburg, J., concurring). Under the Supreme Court's reading of the statute, a condition that shows no symptoms after medication simply is not a disability. *See id.* at 488–89, 119 S.Ct. 2139; *see also Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 201–02, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Court therefore concludes that plaintiff's hypertension is not a disability because it does not substantially impair plaintiff's life activities of walking, breathing and seeing so long as she takes her medication.

It is true, as *Sutton* recognized, that high blood pressure can constitute a disability, if the high blood pressure substantially limits a major life activity. *See Sutton v. United Air Lines, Inc.*, 527 U.S. at 488, 119 S.Ct. 2139. As the Supreme Court phrased the inquiry, whether a condition controlled by medication is a disability "depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting." *Id.* (emphasis in original). Here, according to plaintiff's own allegations, she suffers no ill effects from hypertension in her daily life activities when she is taking her medication. The only circumstances in which plaintiff's hypertension is not controlled by medication is when she is working in an EPA office. Plaintiff has not asserted, however, that she is substantially limited by her hypertension in the major life activity of working.[7] Unfortunately for

(6th Cir.1991) (request for accommodation to be free from stress-producing situations at work is an unreasonable accommodation); *Vandeveer v. Fort James Corp.*, 192 F.Supp.2d 918, 940 (E.D.Wis.2002) ("Asking an employer to reduce the stress of the workplace is an ambiguous, perhaps unattainable goal, and is not a reasonable accommodation."); *cf. Gonzagowski v. Widnall*, 115 F.3d 744, 746–

47 (10th Cir.1997) ("An impairment [limited to and arising from stress at work] does not qualify as a disability.").

7. To establish a substantial limitation on the major life activity of working, plaintiff would have to allege and prove "that in [her] particular circumstances, taking into account the appropriate factors, [her] impairment pre-

plaintiff, a person whose daily life activities are not substantially limited, even though her performance at work is subject to physical limitations, is not disabled. *See Toyota Motor Mfg. v. Williams*, 534 U.S. at 201–02, 122 S.Ct. 681 (question of whether an impairment constitutes a disability cannot be assessed by analyzing only the effect of the impairment in the workplace). Plaintiff is not entitled to an accommodation for an affliction that is not a disability under the statute.

While plaintiff has trouble seeing and walking, and there is no dispute that those afflictions, stemming from multiple sclerosis, glaucoma and optic neuritis, constitute disabilities under the statute, no evidence has been presented that those conditions prevent the plaintiff from working at the office. Plaintiff's doctors only discussed the need for the home accommodation in the context of her hypertension. *See supra* at 141–142. In addition, EPA has represented that while at work the plaintiff will be able to rest when necessary, so as to alleviate the burden on her eyes and to take account of the problems plaintiff experiences with balance and muscle weakness caused by multiple sclerosis. Accordingly, with hypertension not being a disability *for this plaintiff* because it can be controlled by medicine and therefore does not limit her walking, breathing and seeing, and with plaintiff not needing to work from home for any other disability-related reason, this case presents the unusual situation where the plaintiff is disabled, but the accommodation she has requested is not tied to her disability. *See Felix v.*

*New York City Transit Authority*, 324 F.3d 102, 105 (2d Cir.2003).

While the Rehabilitation Act requires an employer to provide a reasonable accommodation for an employee's disability, the accommodation must be responsive to and tailored to a specific disability, as a careful review of the statute demonstrates. The Act provides that disability discrimination occurs when the employer fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ...." 42 U.S.C. § 12112(b)(5)(A) (delineating what the term "discrimination" includes); *see* 29 U.S.C. § 791(g) (incorporating the provisions of the Americans with Disabilities Act). The Act only proscribes the failure to provide reasonable accommodations, however, when that failure occurs "against a qualified individual with a disability *because of the disability* ...." 42 U.S.C. § 12112(a) (emphasis added). It follows, as the District of Columbia Circuit has held, that the accommodation must be tied to a specific disability raised by a plaintiff in his or her request for accommodation. *See Flemmings v. Howard University*, 198 F.3d 857, 860 (D.C.Cir.1999) (statute specifically prohibits discrimination against a qualified individual with a disability " 'because of' *that* disability") (quoting 42 U.S.C. § 12112(a)) (emphasis added). *Accord Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 687 (8th Cir.2003) ("there must be a causal connection between the major life activity that is limited and the accommodation sought"); *Felix v. New York City Transit Authority*,

vents [her] from performing a 'substantial class' or 'broad range' of jobs otherwise available to [her]" rather than demonstrating that she is unable to do her specific job. *Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1115 (D.C.Cir.2001) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. at 491–92, 119 S.Ct. 2139). This as-

sumes, of course, that working qualifies a major life activity, a premise that the Supreme Court has questioned. *See Sutton v. United Air Lines Inc.*, 527 U.S. at 492, 119 S.Ct. 2139; *Toyota Motor Mfg. v. Williams*, 534 U.S. at 184, 122 S.Ct. 681. *See also Scarborough v. Natsios*, 190 F.Supp.2d 5, 21–22 & n. 15 (D.D.C.2002).

324 F.3d at 105 (employer discriminates against employee with a disability only by failing to provide a reasonable accommodation for the specific disability that is the impairment of a major life activity). Because plaintiff has not demonstrated that working from home is a reasonable accommodation responsive to her multiple sclerosis, glaucoma or optic neuritis, the Court finds that she is unlikely to prevail on the merits of her disability discrimination claim.[8]

## C. *Remaining Matters*

In the absence of a likelihood that plaintiff can prevail on the merits of her disability discrimination claim, the other factors relating to the availability of preliminary injunctive relief—irreparable injury, the balance of harms caused by the issuance *vel non* of the injunction, and whether the public interest would be served by the injunction—need not be addressed in detail. While plaintiff is likely to suffer health risks, even serious health risks, if she goes to work at an EPA office, and EPA has allowed her to work from home for four years with minimal adverse effect, the public interest would not be served by allowing a likely unsuccessful plaintiff to continue working from home and drawing a substantial salary even though EPA has not deemed it appropriate to assign her substantial work.

For these reasons, plaintiff's motion for a preliminary injunction is DENIED. Defendant's motion to dismiss is GRANTED in part and DENIED in part. Defendant's motion for summary judgment is GRANTED. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

## *ORDER AND JUDGMENT*

For the reasons stated by separate Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for a temporary restraining order [3–1] is DENIED as moot; it is

FURTHER ORDERED that plaintiff's motion for a preliminary injunction [14–1] is DENIED; it is

---

**8.** EPA also argues that even if the plaintiff were disabled, she would still not be entitled to relief because she was not subject to any adverse employment action in being reassigned to be a Program Analyst. The question is whether ordering an employee to work in conditions where she—but only she—will suffer health problems is an adverse employment action. EPA, relying on D.C. Circuit precedent, argues that an employment action is adverse only when the new assignment is objectively worse than the previous position. *See Stewart v. Ashcroft,* 352 F.3d 422, 426–27 (D.C.Cir.2003); *Brown v. Brody,* 199 F.3d 446, 455–57 (D.C.Cir.1999) ("Mere idiosyncracies of personal preference" are insufficient to make out a. discrimination claim). Because the plaintiff has not been given any decrease in authority, salary, responsibility or the like (according to the defendant), EPA contends that ordering her to work at a particular location is not an adverse employment action. That may or may not be correct, depending on the circumstances.

To require that an employment action be objectively adverse or, in the words of *Brody,* to cause "objectively tangible harm," *Brown v. Brody,* 199 F.3d at 457, is not to suggest that the change affect everyone identically. While plaintiff's medical condition places her in a somewhat unusual position, the entire point of the Rehabilitation Act and the Americans with Disabilities Act is to make employers conscious and tolerant of disabled employees' relatively unusual limitations. The Court has no doubt that assigning a wheelchair-bound employee to an office accessible only by use of a ladder and a tightrope (and thereby forcing her resignation) would be an adverse employment action even if accompanied by an increase in salary and responsibility. Changes objected-to by reason of "idiosyncracies of personal *preference*" do not qualify as adverse employment actions; changes that make it impossible for a disabled person to perform her job do.

FURTHER ORDERED that defendant's motion to dismiss [15–1] is GRANTED in part and DENIED in part; defendant's motion to dismiss plaintiff's retaliation claim is GRANTED for failure to exhaust her administrative remedies, and defendant's motion to dismiss plaintiffs' disability discrimination claim is DENIED; it is

FURTHER ORDERED that defendant's motion for summary judgment [15–2] is GRANTED with respect to plaintiff's disability discrimination claim; it is

FURTHER ORDERED that JUDGMENT is entered for defendant on the claim of disability discrimination; it is

FURTHER ORDERED that this case is DISMISSED from the docket of this Court; and it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* FED. R. APP. P. 4(a).

SO ORDERED.