**Thomas D. BROWN, Plaintiff,**

v.

**John W. SNOW, Secretary United States Department of Treasury (BEP) Defendant.**

**No. Civ.A. 03–1114 (RJL).**

United States District Court, District of Columbia.

April 24, 2005.

the Report, the plaintiff's arguments on this     point are moot.

Karl W. Carter, Jr., Washington, DC, for Plaintiff.

Ana Matheson, Pamela D. Huff, U.S. Attorneys Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

LEON, District Judge.

[# 11]

The plaintiff, Thomas Brown ("Brown"), has brought this action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.,* on theories of retaliation, hostile work environment, and failure to accommodate, which plaintiff alleges occurred during his employment with the Bureau of Engraving and Printing in the Department of Treasury ("Treasury Department," "BEP," or "defendant"). Presently before the Court is defendant's motion to dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment. Upon consideration of the defendant's motion, the plaintiff's opposition, the defendant's reply thereto, and the entire record herein, the Court GRANTS defendant's motion for summary judgment.

## I. BACKGROUND

The plaintiff is an African–American male who began working for the BEP in 1971. Compl. ¶ 3. When this action was filed, he worked as a Photoengraver in the Photoengraving Branch Office of Engraving. Compl. ¶ 5. Plaintiff asserts claims for retaliation, hostile work environment, and failure to accommodate in violation of Title VII and the Rehabilitation Act.[1] *See* Compl. ¶¶ 22–41. These claims are based primarily upon: (1) being charged with absence without leave ("AWOL") on March 20, 2001, compl. ¶¶ 6, 9; (2) being suspended for three days on May 18, 2001 and again on September 6, 2001, *id.* ¶¶ 13–14, 24; (3) being charged with fraudulently altering his time and attendance sheets in August, 2001, *id.* ¶ 8; (4) receiving only a "fully satisfactory" performance evaluation on December 10, 2001, *id.* ¶ 15–16; (5) being subjected to unwarranted supervision by his superiors, *id.* ¶ 38; and (6) failing to accommodate his lower back injury, *id.* ¶¶ 33–36.

On June 1, 2001 and January 28, 2002, the plaintiff filed discrimination complaints with the Equal Employment Opportunity ("EEO") counselor for the Treasury Department.[2] *See* Def.'s Motion to Dismiss or, in the alternative, Motion for Summary Judgment ("Def.'s Mot."), Exhibits 2–4. In plaintiff's June 1, 2001 EEO complaint, he alleged that the March 20, 2001 AWOL charge and the May 18, 2001 suspension constituted a hostile work environment, harassment, retaliation, and discrimination based on disability. *See* Pl.'s Opp., Exh. 1. In his January 28, 2002 complaint, plaintiff

alleged that his December 6, 2001 annual performance rating constituted retaliation and discrimination based on disability. *See* Def.'s Mot., Exh. 2. On June 2, 2003, the Office of Equal Opportunity for the Treasury Department returned a finding of "no discrimination," *see* Plaintiff's Opposition to Def.'s Mot. ("Pl.'s Opp."), Exh. 8 (Treasury Department's Final Agency Decision), and this civil action followed.

## II. STANDARD OF REVIEW

Presently before the Court is defendant's motion to dismiss pursuant to federal rules of civil procedure 12(b)(1) and (6), or, in the alternative, motion for summary judgment. Because both parties have presented materials beyond the pleadings, defendant's motion is treated as a motion for summary judgment. FED. R. CIV.P. 12(b); *see Brug v. Nat'l Coalition for the Homeless*, 45 F.Supp.2d 33, 36 n. 3 (D.D.C.1999) (noting that it is fair to convert a motion to dismiss into a motion for summary judgment where both parties present matters outside the pleadings).

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Ca-*

---

1. Plaintiff also raised a race discrimination claim in his complaint, but it was subsequently abandoned or withdrawn in his opposition to defendant's present motion. *See* Pl. Opp., p. 2.

2. Plaintiff had previously filed EEO complaints alleging discriminatory conduct on

September 25, 1995; January 19, 1996; May 31, 1996; and October 9, 1999. Def.'s Mot., Exh. 32. One of plaintiff's previous complaints served as the basis for a civil lawsuit, which the parties settled in November 2001. *See* Pl.'s Opp., Exh. 51.

*trett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). In opposition, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The court must view the facts in the light most favorable to the non-movant, giving the non-movant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

As a preliminary matter, the defendant contends that some of plaintiff's "claims" should be dismissed because he did not raise them in his EEO complaint. Def.'s Mot., p. 3. The defendant, however, improperly confuses the *legal claims* or *theories* raised by the plaintiff with the *factual allegations* relied upon to support these claims. Because the Court finds that the three legal theories that form the basis of the present action (e.g., retaliation, hostile work environment, and failure to accommodate) were raised in plaintiff's pertinent EEO complaints, the Court will address the viability of each theory in turn.

### A. Retaliation

The plaintiff seeks relief under Title VII based on retaliation arising from allegations of conduct on the part of the defendant that occurred predominantly during 2001. Compl. ¶¶ 22–26, 32–41. Specifically, plaintiff's claim is based on being charged with AWOL on March 20, 2001, and being suspended on May 18, 2001, and again on September 6, 2001, at least seventeen months after plaintiff's previous EEO activity. Compl. ¶¶ 22–26. For the following reasons, neither alleged instance of retaliation is legally viable.

### 1. The AWOL Charge

■ With respect to the AWOL charge, the plaintiff has utterly failed to demonstrate a *prima facie* case for unlawful retaliation. To establish a *prima facie* case of unlawful retaliation, the plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that his employer took an adverse personnel action; and (3) that a causal connection existed between the adverse action and the protected activity. *Singletary v. District of Columbia,* 351 F.3d 519, 524 (D.C.Cir.2003); *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). In this case, the plaintiff has not demonstrated that the AWOL charge is "adverse" within the meaning of Title VII.

■ To demonstrate that an employment action is actionably "adverse," the plaintiff bears the burden of showing some "objectively tangible harm," which maybe evidenced by conduct such as firing, failure to promote, a considerable change in benefits, or reassignment with a significant difference in responsibilities. *Brown v. Brody,* 199 F.3d at 452. Plaintiff asserts, rather summarily, that the AWOL charge was "adverse" because his pay was reduced for the period of time that he was allegedly AWOL. Pl.'s Opp., pp. 12–16. The Court, however, is not persuaded that the fact that he experienced a modest reduction in compensation renders the AWOL charge per se "adverse," particularly when the record establishes that the defendant offered to rescind the charge if the plaintiff signed an agreement to comply with the defendant's employment rules and regulations in the future. *See* Declaration of Robert Bishop ("Bishop Decl.")

¶¶ 6–8.[3] Indeed, any "adverse" repercussions were in fact due to the *plaintiff's* refusal to sign the agreement, rather than the defendant's desire to retaliate against the plaintiff for his prior EEO activity. *See Ridley v. District of Columbia,* 945 F.Supp. 333, 341 (D.D.C.1996) ("At the heart of any valid retaliation claim are allegations that *the defendant sought to harm* the plaintiff for engaging in activity protected under Title VII.") (emphasis added). Accordingly, plaintiff has not demonstrated a *prima facie* case for retaliation based upon the AWOL charge.[4]

### 2. The Various Suspensions

Unlike the AWOL charge, the Court concludes that plaintiff has demonstrated a *prima facie* case for retaliation with respect to the two suspensions. The defendant does not appear to dispute that the suspensions were "adverse employment actions." Instead, the defendant argues that the plaintiff has not demonstrated that the requisite causal connection exists between the suspensions and the prior EEO activity. *See* Def.'s Mot, pp. 22–30. To demonstrate causation in the absence of direct evidence, such as in this case, the plaintiff must show that the employer knew of the protected activity and that the adverse action occurred soon thereafter. *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999). It is undisputed that plaintiff's first-line supervisor, Robert Bishop ("Bishop"), *knew* that plaintiff had filed prior EEO complaints alleging discrimination before he suspended the plaintiff in May of 2001. *See* Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s SMF"), ¶ 13 (stating that Bishop testified as a principle witness in a hearing regarding one of the plaintiff's prior complaints). Although over seventeen months transpired between the plaintiff's protected activity (i.e., the filing of his EEO complaint in October 9, 1999), *see* Def.'s Mot., Exh. 32, and the first suspension, *see* Compl. ¶¶ 13–14, at least one of the prior EEO complaints was still pending until November 2001, *see* Pl.'s Opp., Exh. 51. As a result, Bishop's knowledge of the plaintiff's prior EEO complaints, when viewed in conjunction with the temporal proximity between plaintiff's pending prior EEO activity and the two suspensions, is enough to demonstrate a *prima facie* case for retaliation.

---

**3.** In his opposition, plaintiff asserts that he had a "gentleman's agreement" to withdraw the AWOL charge with his supervisor, and, therefore, the "agreement" was valid without his signature. Pl.'s Opp., p. 14. It appears that he makes this argument to suggest that the defendant retaliated against him by subsequently reneging on the "agreement," charging him with AWOL, and cutting his pay. This allegation, however, is not sufficiently substantiated since it is not supported by documentation within the meaning of rule 56(e). *See* FED. R. CIV. P. 56(e) ("[A]n adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial."). Moreover, plaintiff failed to comply with this Court's local rule, which requires the submission of a separate concise statement of genuine issues setting forth all material facts that are in dispute. *See* Local Rule 56.1 ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Accordingly, the Court is left with the defendant's properly substantiated representations that the plaintiff refused to sign the agreement.

**4.** The Court notes that even if the plaintiff had demonstrated a *prima facie* case for retaliation, the defendant articulated legitimate, non-discriminatory reasons for its actions, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and the plaintiff has not established that these reasons were a pretext for discrimination.

■ Plaintiff's retaliation claim must nevertheless fail as a matter of law because the defendant has articulated legitimate, non-retaliatory reasons for both suspensions and there is no evidence that these reasons were pretext for retaliation. *See Burton v. Batista,* 339 F.Supp.2d 97, 105 (D.D.C.2004) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). The defendant has introduced evidence that the May 18, 2001 suspension was based on charges that plaintiff: (1) left his workstation without notifying his supervisor; (2) was unavailable at the start of his workshift; and (3) failed to follow instructions in a timely fashion. Def.'s Mot. p. 22, Exh. 12. Moreover, the record establishes that the second suspension was based on: (1) conduct unbecoming of a federal employee; (2) failure to report to an assignment in a timely manner; and (3) unauthorized absences. *Id.* at 24, Exh. 14. Because the plaintiff has failed to present sufficient evidence to allow a jury to conclude that these explanations are a pretext for unlawful retaliation, defendant's motion for summary judgment on the retaliation claim must be granted.

## B. Failure to Accommodate

■ Plaintiff alleges that he suffers from lower back pain, pain in his legs, headaches, and blurred vision, and that the defendant has failed to accommodate these conditions in violation of the Rehabilitation Act. Compl. ¶¶ 32–36; Pl.'s Opp'n, pp. 26–28.[5] More specifically, he contends that these impairments "altered his ability to perform the duties of his position and or report to work." Pl.'s Opp'n, p. 28. And, rather than accommodating his condition, the plaintiff further asserts that the defendant subjected him to adverse personnel action, such as an AWOL charge, suspensions from work, charges that he altered his time and attendance sheets, and the issuance of negative performance evaluations. *See* Compl. ¶¶ 6–9, 13–16, 24, 33–36, & 38; Pl.'s Opp'n, pp. 27–28. These allegations, even if true, are insufficient to support plaintiff's failure to accommodate claim.

■ To establish a *prima facie case* of discrimination for failure to accommodate, as asserted here, the plaintiff bears the burden of showing "(1) that he was an individual who had a *disability* within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Scarborough v. Natsios,* 190 F.Supp.2d 5, 19 (D.D.C.2002) (quoting *Rhoads v. F.D.I.C.,* 257 F.3d 373, 387 n. 11 (4th Cir.2001)) (emphasis added). Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[6] 42 U.S.C. § 12111(8).

---

**5.** The Court notes that, in his complaint, Plaintiff cites to both the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* as the statutory basis for his failure to accommodate claim. *See* Compl. ¶ 2(c). The Rehabilitation Act, however, expressly incorporates the standards of the ADA for claims of employment discrimination. *Lester v. Natsios,* 290 F.Supp.2d 11, 23 n. 2 (D.D.C.2003) (citing 29 U.S.C. § 791(g)); *see also Bragdon v. Abbott,*

524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (noting that the ADA provides "at least as much protection as provided by the regulations implementing the Rehabilitation Act") (citing 42 U.S.C. § 12201(a)). In this Opinion, the Court will utilize the definitions and standards applicable to the ADA in determining whether the plaintiff has proven the violation of either statute.

**6.** By way of background, "[t]he ADA requires covered entities ... to provide 'reasonable

The term "disability" is defined, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual . . . ." *Id.* § 12102(2). In the final analysis, a plaintiff is "disabled" under the ADA if: "(1) he suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity under the Act; and (3) the limitation is substantial." *Haynes v. Williams*, 392 F.3d 478, 481–82 (D.C.Cir.2004). Thus, in this case, whether the plaintiff's failure to accommodate claim should survive the defendant's motion for summary judgment first depends on whether his conditions (e.g., lower back and leg pain, headaches, and high blood pressure) substantially limit a major life activity. *See* 42 U.S.C. § 12102(2)(A) (defining "disability" for purposes of the ADA). For the following reasons, the Court concludes that plaintiff has failed to raise a genuine issue that he is disabled under the ADA, and grants the defendant's motion for summary judgment on this claim.

The most patent deficiency in plaintiff's disability claim is that he fails to demonstrate that his condition limits a major life activity. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (noting that "[m]erely having an impairment does not make one disabled for purposes of the ADA [; c]laimants also need to demonstrate that the impairment limits a major life activity[,]" and that the limitation is "substantial"). Indeed, to support his claim plaintiff summarily states that his "physical disability" limits "one or more of his major life activities," but fails to articulate with any particularity the major life activity substantially limited,[7] *see* Pl.'s Opp'n, p. 27, let alone that a genuine issue exists that any such limitation is "substantial," *see Coleman–Adebayo v. Leavitt*, 326 F.Supp.2d 132, 142–43 (D.D.C.2004) ("[A] person whose daily life activities are not *substantially* limited, even though her performance at work is subject to physical limitations, is not disabled.") (citing *Toyota Motor Mfg.*, 534 U.S. at 201–02, 122 S.Ct. 681).[8] Accordingly, the Court grants the

---

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (quoting 42 U.S.C. § 12112(b)(5)(A) of the ADA).

7. Plaintiff appears to assert *implicitly* that his condition limits his ability to work. This argument assumes, of course, that "working" qualifies as a "major life activity," an assumption that the Supreme Court itself has questioned. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

8. To establish a substantial limitation on the major life activity of working, plaintiff "must allege and prove that in his particular circum-

stances, taking into account the appropriate factors, his impairment prevent him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him[,]" rather than demonstrating that he is unable to do his specific job. *Duncan v. Wash. Metro. Transit Auth.*, 240 F.3d 1110, 1115 (D.C.Cir.2001) (citing *Sutton*, 527 U.S. at 491–92, 119 S.Ct. 2139). Here, the relevant time period for purposes of the instant analysis is the year 2001, because it is during that year that the alleged discrimination that forms the basis of plaintiff's complaint occurred. *E.g.*, Compl. ¶¶ 6, 8–9, 13–16, 33–36, 38. During 2001, however, the plaintiff's major life activity of working was not "substantially limited." The record shows that, although the plaintiff was experiencing lower back pain and certain temporary physical limitations, plaintiff's condition did not substantially limit his ability to work because these restrictions were temporary. *See Lester v. Natsios*, 290 F.Supp.2d 11, 24 (D.D.C.2003) ("A claimant must . . . demonstrate that the impairment . . . is perma-

defendant's motion for summary judgment on the failure to accommodate claim.

## C. Hostile Work Environment

██ Finally, the plaintiff alleges that he was subjected to a hostile work environment.[9] Compl. ¶¶ 37–41. To prove hostile work environment, the plaintiff must demonstrate that: "(1) [he] is a qualified individual with a disability [under the ADA]; (2)[he] was subjected to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that the [defendant] knew or should have known of the harassment and failed to take prompt effective remedial action." *Brown v. Small*, 2005 WL 736530, *5 (D.D.C. March 31, 2005) (citing *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667 (3d Cir.1999)). For the

following reasons, he has failed to meet this burden.

██ First, as noted previously, the plaintiff has utterly failed to demonstrate that he is "disabled" under the ADA. However, even assuming arguendo that the plaintiff is "disabled," his claim must still fail because he has not demonstrated that defendant's conduct was sufficiently severe or pervasive to be actionable under Title VII. In reviewing defendant's alleged conduct, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offense utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Based on this standard, the plaintiff's allegations, such as they are, do not "create an objectively hostile or abusive work environment." *See Harris*, 510 U.S. at 21–22, 114 S.Ct.

nent or long-term."). Indeed, as one of the exhibits submitted by the plaintiff in support of his opposition points out, plaintiff's medical doctor did not even recommend permanent job restrictions for the plaintiff until October 2002, which is after the plaintiff filed the discrimination complaints that form the basis of the present action. *See* Pl.'s Opp'n, Exh. 43 (letter from Laura Welch, M.D., to the Bureau of Engraving and Printing's health unit). Although even temporary conditions, in some instances, may substantially limit a major life activity, the record further fails to establish that plaintiff's temporary condition substantially limited a major life activity during the relevant period in 2001. *See Lester*, 290 F.Supp.2d at 24 n. 3 (noting that "[w]hile the presumption exists that temporary impairments do not qualify as disabilities . . ., temporary conditions still require a case-by-case evaluation") (internal citation omitted). Because the plaintiff has not shown that one of his major life activities was substantially limited during the time period relevant to the instant dispute, he has not established the first prong of his prima facie

case of disability discrimination. *See Walker v. Ashcroft*, 2002 WL 335530, at *1 (D.C.Cir. Jan. 25, 2002) (per curiam) (finding that the employee had not sufficiently alleged that his impairment substantially limited one or more major life activities).

9. Most of the case law on harassment deals with harassment based on gender or race rather than disability. *Henry v. Guest Servs., Inc.*, 902 F.Supp. 245, 252 n. 9 (D.D.C.1995). The courts that have addressed harassment in the context of disability claims apply the standards utilized in Title VII hostile work environment claims. *Id.; see also Brown v. Small*, 2005 WL 736530, *5 (D.D.C. March 31, 2005). The Court, however, notes that whether the Rehabilitation Act provides a cause of action for hostile work environment is not definitely decided. *E.g., Kuraner v. Mineta*, 2001 WL 936369 (D.C.Cir.2001) (assuming, without deciding, that such a claim exists). Nevertheless, this Court will likewise assume, without deciding, that such a cause of action exists and apply the standards set forth in Title VII.

367; *Barbour v. Browner,* 181 F.3d 1342, 1347–48 (D.C.Cir.1999) ("[A] workplace environment becomes hostile for the purposes of Title VII only when offensive conduct permeates the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotations and citations omitted).[10] Moreover, the plaintiff is the sole basis for the majority of these allegations, and provides the Court with very little supporting evidence to strengthen or corroborate his position. *See* Pl.'s Opp'n, pp. 28–36; *Dancy v. Am. Red Cross,* 972 F.Supp. 1, 3 (D.D.C.1997) ("The evidence presented in support of this claim, however, consists only of Plaintiff's vague, unsubstantiated allegations and is, therefore, insufficient."). Simply stated, the lack of evidence offered by the plaintiff with regard to these alleged hostile acts is insufficient to overcome the defendant's motion for summary judgment. Accordingly, the Court GRANTS the defendant's motion for summary judgment as to plaintiff's hostile work environment claim.

### IV. CONCLUSION

For the foregoing reasons, the Court grants the defendant's motion for summary judgment and dismisses the action in its entirety. An order consistent with the Court's ruling accompanies this Memorandum Opinion.

### *FINAL JUDGMENT*

For the reasons set forth in the Memorandum Opinion and Order entered this 24th day of April, 2005, it is hereby

**ORDERED** that the defendant's Motion for Summary Judgment [#11] is **GRANTED**; and it is further

**ORDERED** that judgment is entered in favor of the defendant, and the case is dismissed with prejudice.

**SO ORDERED.**

---

10. Plaintiff merely asserts in support of this claim that the defendant: (1) subjected him to "close supervision"; (2) improperly suspended him; (3) issued him negative employment evaluations; (4) falsely charged him with time and attendance violations; and (5) has failed to accommodate his disability. Compl. ¶¶ 37–41.